In re SCHILLING et al.

(District Court, N. D. Ohio, E. D.   July 9, 1918.)

No. 6510.

1. BANKRUPTCY ⬅︎172—APPLICATION FOR PERFORMANCE BOND—ASSIGNMENT OF PLANT AND MATERIALS—CHATTEL MORTGAGE.

A contractor's application for performance bond, assigning to the surety company, in event of nonperformance, all contractor's interest in tools, plant, materials, etc., has no greater force than chattel mortgage, and, as between surety company and trustee in bankruptcy of contractor, it is to be regarded as if it were on its face a chattel mortgage.

2. BANKRUPTCY ⬅︎152—RIGHT OF TRUSTEE—LIEN FROM ATTACHMENT OR EXECUTION.

Since amendment by Act June 25, 1910, § 8, to Bankruptcy Act July 1, 1898, § 47a (2), trustee in bankruptcy, as of date of adjudication, has all rights of creditors of bankrupt, as if such creditors had succeeded in fixing lien on bankrupt's property by levy of attachment or execution.

3. CHATTEL MORTGAGES ⬅︎196—FAILURE TO RECORD—VALIDITY AS TO CREDITORS—STATUTE.

By Gen. Code Ohio, § 8560, a chattel mortgage, not filed for record, and under which possession has not previously been taken by the mortgagee,

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is void as to all creditors of the mortgagor and subsequent purchasers and mortgagees in good faith.

4. BANKRUPTCY ☞254—COMPLETION OF CONTRACT BY TRUSTEE OR SURETY—DISCRETION OF COURT.

Whether or not a bankruptcy court will authorize its trustee to complete an unperformed contract, or will permit a surety of the bankrupt to make use of the property of the estate in so doing, is a matter within the discretion of the court; the surety not being entitled as a matter of right.

5. BANKRUPTCY ☞228—DISCRETIONARY DETERMINATION OF REFEREE—REVIEW.

Determination of referee in bankruptcy that best interests of estate require immediate sale of equipment, material, and supplies used by bankrupt in performing a public contract, rather than that surety on bankrupt's performance bond should be permitted to use property in completing contract, is within discretion of referee, and not subject to review.

6. SUBROGATION ☞7(1)—PERFORMANCE BOND—ASSIGNMENT IN EVENT OF NONPERFORMANCE.

Under contractor's application for performance bond, assigning to surety company, in event of nonperformance, all interest of contractor, and all tools, plant, equipment, and materials, also assigning all subcontracts and materials involved, upon the event of the condition, surety was entitled to be subrogated to all liens, rights, and remedies of other parties to the contract, and of laborers and materialmen whose bills it paid, or might be required to pay.

7. MECHANICS' LIENS ☞13—PUBLIC BUILDINGS.

Public buildings, owned or being constructed by public authority out of public funds, are not within the purview of mechanics' lien laws, unless expressly so provided.

8. MECHANICS' LIENS ☞13—PUBLIC HIGHWAY—RIGHTS OF LABORERS AND MATERIALMEN—STATUTES.

Despite Gen. Code Ohio, §§ 6947, 8310, 8311, 8376, and under section 8324 et seq., laborers and materialmen working for and furnishing material to a contractor with county authorities to construct a public highway have no rights against the equipment of the contractor, and materials furnished, other than that of general creditors; no lien on public buildings or highways being provided.

In Bankruptcy. In the matter of Chandler Schilling and W. H. Loller, doing business as the Schilling Construction Company, bankrupt. On petition for review of judgment of the referee. Affirmed.

McKain & Ohl, of Youngstown, Ohio, for trustee.

Wilson & Wilson, of Youngstown, Ohio, for bankrupt and Surety Co.

WESTENHAVER, District Judge. The Schilling Construction Company, a partnership, consisting of Chandler Schilling and W. H. Loller, entered into a contract with the board of county commissioners of Stark county, Ohio, for the construction of a public highway, known as the Cairo-Hartville road. This contract contains the usual provisions for payment on monthly estimates and for the retention of 10 per cent. of each estimate until the contract is fully performed. The contractor also executed a performance bond, with the New Amsterdam Casualty Company as surety in the sum of $97,506.78. The conditions of this bond, among other things, require that the surety shall be liable for all labor and material furnished or used in the construction of the road, and shall save the county commissioners

harmless from any default or failure of the principal contractor to pay for the same. In order to obtain this bond the Schilling Construction Company executed a written application, containing, among other provisions, the following:

"And for the better protection of the said company the applicant does, as of the date hereof, hereby assign, transfer, and convey to the said company all the right, title, and interest of the applicant in and to all the tools, plant, equipment, and materials of every nature and description that it may now or thereafter have upon said work, or in, on, or about the site thereof, including as well materials purchased for or chargeable to said contract, which may be in process of construction, on storage elsewhere, or in transportation to said site, hereby assigning and conveying also all its rights in and to all subcontracts which have been or may hereafter be entered into, and the materials embraced therein, and authorizing and empowering said company, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment, materials, and subcontracts, and enforce, use, and' enjoy such possession upon the following conditions, viz.: This assignment shall be in full force and effect as of the date hereof, should the applicant fail or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on its part under the same contract."

This application contains also a provision that the surety shall be subrogated to all the rights of the principal in the contract, and contains an assignment from the principal of all deferred payments and retained percentages, and any and all moneys and properties that may be due at the time of any breach or default.

An involuntary petition in bankruptcy was filed by this partnership in this court December 29, 1917, and an adjudication in bankruptcy was entered February 28, 1918. This contract was then only partially performed. There was upon the highway certain equipment belonging to and being used by the bankrupt, and also certain materials which had been bought by them and delivered on the job, to be used in constructing this highway. The controversy concerns this property. The surety, after the date of adjudication, took possession of this equipment and materials, and claims that it is entitled thereto by virtue of the assignment in the application for the performance bond above quoted, and also by virtue of the equitable doctrine of subrogation; that at least it is entitled to use and consume the materials in the completion of the highway, and to make use of the equipment until it is completed. The referee decided against these contentions, and ordered a sale of all the equipment, supplies, and material for the benefit of the bankrupt estate. This petition is filed to review that judgment of the referee.

[1] It is settled law in this district that the provisions above quoted from the bankrupt's application have no greater force and effect than a chattel mortgage, and that as between the surety company and the trustee of the bankrupt it is to be regarded as if it were in fact a chattel mortgage. Title Guaranty & Surety Co. v. Witmire (6 C. C. A.) 195 Fed. 41, 115 C. C. A. 43; Potter Mfg. Co. v. Arthur (6 C. C. A.) 220 Fed. 843, 136 C. C. A. 589, Ann. Cas. 1916A, 1268; Massachusetts Bonding & Insurance Co. v. Kemper (6 C. C. A.) 220 Fed. 847, 136 C. C. A. 593.

[2] It is also settled law that since the amendment by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1916, § 9631), of section 47a (2) of the Bankruptcy Act, a trustee in bankruptcy has, as of the date of adjudication, all the rights of creditors of the bankrupt, as if such creditors had succeeded in fixing a lien thereon by the levy of an attachment or execution. Potter Mfg. Co. v. Arthur, supra; Fairbanks Shovel Co. v. Wills, 240 U. S. 642, 36 Sup. Ct. 466, 60 L. Ed. 841. Prior to this amendment it had been held that the trustee acquired such title only as the bankrupt himself had, and that the trustee's title was therefore not superior to that of an unrecorded chattel mortgage valid as between the parties thereto. Title Guaranty & Surety Co. v. Witmire, supra; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782.

[3-5] It is also settled law in Ohio that a chattel mortgage not filed for record, and under which possession has not previously been taken by the mortgagee, is void as to all creditors of the mortgagor and subsequent purchasers and mortgagees in good faith. Section 8560, General Code of Ohio, so provides. Inasmuch, therefore, as it is a conceded fact that possession of the property in question was not taken by the surety until after adjudication, and that its chattel mortgage was never filed for record, it follows that the surety company does not have any lien upon this equipment, materials, and supplies, or any part thereof, but that its rights, if any, thereto are subordinate to the rights of the trustee. Potter Mfg. Co. v. Arthur, supra; Massachusetts Bonding Co. v. Kemper, supra. The contention of counsel for the surety company that the surety in the case last cited was permitted thus to consume the materials and supplies, and to make use of the equipment until the contract was completed by the surety, does not call for a different conclusion. Whether or not a bankruptcy court will authorize its trustee to complete an unperformed contract, or will permit a surety of the bankrupt to make use of the property of the estate, is a matter within the discretion of the bankruptcy court. The surety is not entitled thereto as a matter of right. It is only when the situation warrants a belief that the bankrupt's estate will be benefited by such a course being pursued that the bankruptcy court will permit the surety to consume the supplies and materials or to use the equipment. This course apparently was permitted in the administration of the bankrupt's estate in the Kemper Case. No point involving the right of a surety so to do, or of the bankruptcy court to refuse the surety that privilege was involved or decided. In the present case the referee, acting no doubt upon the trustee's recommendation, has determined that the best interests of the estate require that such a course shall not be pursued, but that, on the other hand, the estate will be benefited by an immediate sale of the equipment, material and supplies. This determination is entirely within the discretion of the referee, and is not subject to review.

[6] The surety's contention that, by virtue of the provisions of the bankrupt partnership's application for the performance bond, as well as on equitable principles, it is entitled to be subrogated to all the liens, rights, and remedies of the commissioners of Stark county and

of the laborers and materialmen, whose bills it has paid or may be required to pay, is undoubtedly sound. Such is the settled law, evidenced by authorities cited on behalf of the surety, of which the following are illustrative: Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547; Title Guaranty & Surety Co. v. Dutcher (D. C.) 203 Fed. 167, citing numerous pertinent cases.

The contention here, then, comes down to the inquiry as to what liens, rights, and remedies the county commissioners and these laborers and materialmen may have against this equipment and materials. The county commissioners have a right, of course, to retain the reserve percentage, and also any unpaid balance in their hands at the time of the contractor's default. This right inheres in the contract relation, and arises out of and is protected by the county commissioners' possession of the fund. The construction contract does not, however, confer on the county commissioners any title to or lien upon the property now in dispute, or purport to give any right to use the same in completing performance. If such a title or a lien had been in terms expressly conferred, it would not be valid as against the trustee in bankruptcy, for the same reason that a like provision in the surety's contract with the bankrupt is invalid; that is to say, such a provision would be only a chattel mortgage, and would be void if not filed for record, or if possession of the property were not taken prior to the filing of the petition in bankruptcy.

[7, 8] What amount, if any, is due or has been paid to laborers or materialmen by the surety appears only from statements of counsel. These statements are for the purposes of this opinion assumed to be true. Answering the exact question involved, a careful examination of the lien laws of Ohio convinces me that laborers and materialmen have no rights against this equipment and materials other than that of general creditors. Section 6947, General Code (106 Ohio Laws, 574, known as the Cass Law), requires, it is true, a contractor, getting a contract to construct a public highway, to execute a performance bond, which shall contain, among other conditions, one requiring the payment of all labor and material furnished and used in the construction thereof. An action on this bond may be brought by any laborer or materialman at any time within one year after such labor or material is furnished. No lien, however, in any form is thereby given to laborers or materialmen.

General Code, §§ 8310 and 8311, provide what laborers and materialmen shall have liens, and also what property or structures shall be subject thereto. Public buildings and public highways are not within the terms of these sections. Section 8376, General Code, is also cited, but obviously it does not apply to highways owned or constructed by public authorities, but only to such as are owned or constructed by private corporations for profit. This section has also been held unconstitutional. Stewart v. Gardner, 10 Ohio Cir. Ct. R. (N. S.) 409. Furthermore, the law is well settled that public buildings owned or

being constructed by public authority out of public funds are not within the purview of mechanic's lien laws, unless expressly so provided.

Section 8324 et seq., General Code, provides the only rights and remedies of laborers and materialmen who have furnished labor or materials in the construction, improvement, or repair of a road, pavement, sewer, street, or other public improvement. These sections permit him to file with the board, officer, or public authority with which the contract has been made within four months after furnishing labor and materials a sworn and itemized statement of the amount and value thereof. Upon receipt of this notice the board, officer, or public authority, or the authorized clerk or agent thereof, shall retain all subsequent payments due or to become due to the contractor to secure such claims, and also the claims of other subcontractors, materialmen, or laborers who have furnished materials and labor who shall intervene before the next subsequent payment on the contract, or within ten days after such notice is served.

The legal procedure whereby this remedy of the laborer or materialman is worked out need not be stated; it is sufficient to say that his remedy is exclusively against money due or to become due the contractor, and that no lien is given or authorized upon either the public highway or the equipment, materials, and supplies of the contractor assembled on the public highway. His rights are limited exclusively to the moneys due or to become due to the contractor. And it has also been held, and in my opinion correctly, that the lien thus acquired by giving such notice is subordinate to the right of the public authority to retain, control, and apply the reserve percentage, or any balance unpaid at the time of the contractor's default, in finishing the contract' and in protecting the public authority from loss. Port Clinton v. Stone Co., 10 Ohio Cir. Ct. R. 1.

It is earnestly insisted that manifest injustice results from taking the contractor's equipment and materials and supplies, bought and delivered to be used on the improvement, as a fund for general creditors, and leaving the surety bound by the terms of its bond to pay therefor. This injustice, if such it may be regarded, is no different in quality or degree from that which always follows when one sells personal property to another on credit, passing title by delivery, and finds later that this property has been seized by other creditors of the purchaser. Nothing can prevent such results, except taking or preserving a lien in the manner and form provided by law; that is to say, either a conditional sale contract or chattel mortgage, duly filed or recorded.

The judgment of the referee is affirmed. An exception may be noted on behalf of the petitioner.