### In re SCHILLING et al.

#### (District Court, N. D. Ohio, E. D. June 26, 1919.)

#### No. 6510.

BANKRUPTCY ☞140(½)—PROPERTY—TITLE.

    Under contract with county commissioners, providing that contractor, now bankrupt, should furnish all materials and labor and complete highway, and that estimates should be made once a month of the amount and value of "material in place on the ground," title to brick which had been bought by bankrupt, delivered and stacked in piles, partly on and partly off the highway, in position to be used, was in the bankrupt, though included in estimate made, even if regarded as a sale, in view of Uniform Sales Act (Gen. Code Ohio, §§ 8381–8456).

In Bankruptcy. In the matter of Chandler Schilling and W. H. Loller, doing business as the Schilling Construction Company. On trustee's exceptions to special master's report. Second exception sustained.

See, also, 251 Fed. 966, 972.

McKain & Ohl and Hine, Kennedy, Manchester & Conroy, all of Youngstown, Ohio, for trustee.

Frank N. Sweitzer, of Canton, Ohio, for commissioners.

WESTENHAVER, District Judge. This matter is before me on trustee's exception to special master's report finding that title to 186,000 brick is in the county commissioners of Stark county, and was not in the bankrupt, at the time the petition herein was filed. A

brief statement of facts and of former proceedings herein is necessary to a clear understanding of questions of law and of fact to be passed on.

The Schilling Construction Company, a partnership composed of Chandler Schilling and W. H. Loller, entered into a contract with the county commissioners of Stark county for construction of a public highway, known as the Cairo-Hartville road. An involuntary petition in bankruptcy was filed against them December 29, 1917, and an adjudication in bankruptcy was had February 28, 1918. Thereafter the trustee, in administering the assets, found certain property, including these 186,000 brick, upon and along this highway, where construction work was then in progress. The brick had been bought by the bankrupt, delivered to it, and stacked in piles, partly on and partly off the highway, in position to be used in the construction work. The trustee took possession of all this property, including the brick, and caused it to be appraised. Later he filed his petition for authority to sell, making defendants thereto, among others, the New Amsterdam Casualty Company, the surety on the performance bond of the bankrupt, and the county commissioners of Stark county. Notice by mail of the filing of this petition and of the time and place of hearing was given, and the Casualty Company appeared and made claim to this property, but the county commissioners failed to appear. An order was made, finding title to this property, including this brick, in the bankrupt, and authorizing the sale.

This sale was advertised to take place July 27, 1918, and some two days prior thereto the county commissioners brought a suit in the court of common pleas of Stark county, alleging ownership in them of this brick, and sought and obtained a restraining order, preventing the trustee from interfering with the brick or making sale of the same. Later application was made by the trustee to this court for an order enjoining the county commissioners, its officers, and agents from interfering with the bankruptcy court's custody and jurisdiction, and with the trustee's possession and sale of these assets, and from further prosecuting its suit with respect thereto in the state court. The county commissioners appeared herein, a temporary restraining order was granted as prayed, and leave given to appear and file a petition, asserting all their rights and title to the brick.

A petition was accordingly filed, and the issues arising thereon were referred to a special master, to hear the evidence and to report his findings of fact and conclusions of law. He finds that the referee's order of sale had been made without actual service or notice to the county commissioners, and that the title to this brick at and before the filing of the petition in bankruptcy had passed to and was in the county commissioners. Both of these findings are excepted to.

In the view I take of this case the first exception is immaterial and may be disregarded. If it be true that notice by mail is sufficient in law, and was in fact received by the county commissioners, they did not appear and were not heard in opposition to the original order of sale, and therefore, if necessary to enable them to assert and have protected a substantial property right, their petition might be treated

as an application to set aside an order made by default and grant a rehearing.

The other question is the important one. The facts upon which the special master's finding of title was made are not in dispute. These brick had been acquired, delivered, and stacked in the manner already stated, prior to October 10, 1917. On that day the county surveyor, being the person properly authorized in that behalf by the construction contract, made an estimate as required thereby of the amount due to the bankrupt, and included therein 340,000 "brick on site" at $20 per 1,000. The balance thus shown, less 10 per cent. required by the contract to be reserved until the highway was finally completed, was paid by check to the bankrupt on October 20th following. The 186,000 brick, of which possession was taken by the trustee and which is now claimed by him, are a part of the 340,000 thus included in the estimate.

The special master's conclusion of law from these facts that title to the brick had passed, upon making such payment, to the county commissioners, must be based on the view that the construction contract so provided, or that a sale of the brick was thereby effected. No reasons are given to support the finding of fact or conclusion of law. The special master contents himself with saying that they are "the property of Stark county and not subject to sale by the trustee." The question, therefore, is when materials owned or bought by the contractor become the property of the county commissioners. The contract contains, among other clauses, the following:

"Estimates will be made once a month by the engineer as the work satisfactorily progresses of the amount and value of material in place on the ground and work done. Ninety per cent. of the value so determined, less any previous payments made, will be paid to the contractor five days after being approved by the county commissioners. No partial payment can be construed as an acceptance by the county highway superintendent or county commissioners of any material furnished or work done. Any or all estimates may be withheld indefinitely until any or all of the orders given by the engineer or county commissioners, in compliance with and by virtue of the terms of this contract, have been complied with by the contractor."

Authority to include brick in the engineer's estimate is deduced from the words "material in place on the ground." The trustee contends that this means such brick only as had been placed in the highway in their final position, and not brick merely delivered and stacked up by the roadside, ready and available for such use by the contractor. On the other hand, the contention is that any material delivered on the premises and in a position to be used by the contractor as required is within the meaning of the paragraph above quoted. Supporting this contention is invoked the fact that this practice had been followed under this contract.

I deem a decision of this question of construction immaterial, for the reason that, if the inclusion in the estimate of the brick was authorized, it does not follow therefrom as a matter of law that title or property in the bricks passed, as a result thereof, to the county commissioners. This contract is not a contract for the sale of goods. It is one requiring the bankrupt to furnish all the materials and perform all the labor necessary to construct and complete a highway

according to certain definite plans and specifications. This contract is not fully performed until the highway is entirely completed and all unused material and rubbish is removed therefrom. Payments are to be made from time to time on estimates as the work progresses. These payments are in effect payments on account, and the paragraph above quoted furnishes only a basis whereby the amounts may be computed with safety as the work progresses. Obviously the bankrupt, as materials were furnished and labor was performed, needed payments. It was not contemplated that the bankrupt should fully perform the contract and get no payment until the final completion of the work. The provisions in the paragraph above quoted, so far as they permit material in place on the ground to be included in an estimate, are intended to accomplish this purpose, and not to relieve the bankrupt from responsibility for material not yet in its final resting place, or from the burden of performing such further labor as was needed.

Manifestly, notwithstanding this estimate and payment, the bankrupt was required to perform much additional labor in placing these bricks in their final position, and to do this at their own expense. The title to the brick, it seems to me, therefore, remained in the bankrupt, notwithstanding such payment. No change in the relations of the parties to materials not yet used, nor with respect to their obligations and liabilities, was contemplated or is effected merely by the issue and payment of an estimate.

Assuming, however, the theory of a sale, reference to familiar principles of the law of sales will conclusively show that the master's conclusion of law cannot be sustained on that theory. These principles are now embodied in the Uniform Sales Code of Ohio. See General Code, §§ 8381 to 8456. Section 8381 defines a sale of goods as an agreement whereby the seller transfers the property in the goods to the buyer for a consideration called a price. Obviously neither party understood that such an agreement was being made. Property in goods sold is transferred to the buyer at such time as the parties to the contract intended it to be transferred, and, where the contract is silent, certain rules are adopted for the purpose of enabling one to ascertain that intention. Thus section 8399, rule 2, provides in substance that when the contract is one to sell specific goods, and the seller is bound to do something to the goods for the purpose of putting them into a deliverable state, the property does not pass until that something is done. Rule 5 provides in substance that if the seller is required to deliver the goods to the buyer at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, property does not pass until the goods have been delivered to the buyer or reached the place agreed upon. Section 8402 provides in substance that the goods shall remain at the buyer's risk, unless otherwise agreed, until the property therein is transferred to the buyer. These rules merely declare the settled law. See The Elgee Cotton Cases, 22 Wall. 180, 22 L. Ed. 863; United States v. Andrews, 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185; Williston on Sales, §§ 265, 280.

Applying these rules, manifestly title did ·not pass, even if a sale were intended and one was made, because the ultimate place of delivery of these bricks was their final resting place in the completed roadway, and much labor yet remained to be done by the bankrupts before that delivery was made. The question of title to these bricks was considered by me on the petition for review of the New Amsterdam Casualty Company, the bankrupt's surety, which sought to reverse the original order of the referee finding title thereto in the bankrupt. My opinion is reported in 251 Fed. 966. One contention then made was that the surety was entitled by subrogation to all the county commissioners' title to or liens upon this property. I then said (page 970):

"The construction contract does not, however, confer on the county commissioners any title to or lien upon the property now in dispute, or purport to give any right to use the same in completing performance. If such a title or a lien had been in terms expressly conferred, it would not be valid as against the trustee in bankruptcy, for the same reason that a like provision in the surety's contract with the bankrupt is invalid; that is to say, such a provision would be only a chattel mortgage, and would be void if not filed for record, or if possession of the property were not taken prior to the filing of the petition in bankruptcy."

This language was used advisedly and after mature consideration. A re-examination of the questions involved confirms my opinion then reached that no basis exists to support the contention that these bricks are anything else than a part of the equipment and materials acquired and owned by the bankrupt for the purpose of enabling it to perform the contract, and that no change of title or of right resulted from an inclusion of them in an estimate which was afterwards, made.

The second exception to the special master's report will be sustained. An order may be entered, finding that this property is a part of the bankrupt's estate, and denying the county commissioners' claim thereto, and directing the trustee to execute the order of sale heretofore entered. An exception may be noted.