[No. 17326.  Department Two.  April 9, 1923.]

# United States Fidelity & Guaranty Company, Respondent, v. C. W. Ryan, *as Trustee etc., Appellant.*[1]

Bankruptcy (2)—What Constitutes Insolvency.  The insolvency of a highway contractor at the time it conveyed all its equipment and supplies to its surety, and knowledge thereof by the surety, is sufficiently shown by evidence that it notified the state highway board it could not carry on, and five days later made the conveyance to the surety, which completed the contract on account of the financial inability of the contractor to do so.

Same (6-2)—Claims Against Estate—Creditors.  A surety on contract work for a bankrupt contractor becomes a creditor of the bankrupt not later than the date of the contractor's default.

Bankruptcy (5-1, 6)—Preferences—Rights of Trustee.  The liability of a surety on the default of a bankrupt highway contractor does not furnish any consideration, as against the trustee in bankruptcy, for the bankrupt's conveyance to the surety of all its equipment and supplies for the purpose of completing the contract, or make the same any the less an unlawful preference.

Same (5-1, 6).  In such a case, the surety did not acquire any rights, as against the trustee in bankruptcy by way of relation, by reason of the fact that the surety, when it gave the bond, took an indemnity contract from the contractor (which was not recorded as required by Rem. Comp. Stat., §§ 3780, 5827) assigning to it all road making material and supplies used on the contract; since the unrecorded indemnity agreement was void as to the trustee, and the final conveyance and taking possession of the property were void preferences under the bankruptcy act; and the trustee, by relation, became, prior thereto, vested with the rights of a lien creditor as respects the supplies and equipment, as property coming into the custody of the bankruptcy court.

Highways (33)—Construction — Contracts — Reserve Fund—Rights of Surety.  The surety of a contractor on state highway work who paid claims for labor supplies furnished to the contractor is entitled to be subrogated to the rights of claimants, against the bonds, only where the terms of the public improvement contract clearly required the state to withhold funds applicable to the payment of the contractor as a trust fund for the payment of labor and supplies, making such claims preferred and superior to the rights of the contractor.

[1]Reported in 214 Pac. 433.

SAME (33)—CONTRACT—RIGHTS OF STATE—LIABILITY OF SURETY. The state is under no obligation to take over the equipment and supplies and complete the work of a defaulting highway contractor, under a contract giving it the right to do so in case of default; but it may abandon such right and look solely to the contractor's surety to complete the work.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered November 21, 1921, upon findings in favor of the plaintiff, in an action to adjudicate claims against a surety upon a bond to secure the performance of a highway contract, tried to the court. Reversed.

*McMaster, Hall & Schaefer* and *Sidney Teiser,* for appellant.

*McClure & McClure,* for respondent.

PARKER, J.—This equity suit was commenced in the superior court for Thurston county by the plaintiff guaranty company, looking to the adjudication of a number of claims asserted against it as surety upon a bond executed by it to the state of Washington to secure the performance of a public highway construction contract by the Puget Sound Engineering Company. We are here concerned only with the claim of title asserted by the defendant C. W. Ryan, as trustee in bankruptcy of the engineering company, to certain equipment and supplies belonging to it and taken over by the guaranty company upon the abandoning of the contract. A trial in the superior court resulted in a judgment and decree which in part awards to the guaranty company a lien, and foreclosure thereof, upon the equipment and supplies, upon the theory that the guaranty company has a lien thereon in the nature of a pledge or chattel mortgage accompanied by possession, superior to the claim of title asserted by Ryan as trustee in bankruptcy for the engineering company.

From so much of the judgment as decrees such award of lien to the guaranty company, Ryan, as trustee, has appealed to this court; claiming that he is entitled to a money judgment against the guaranty company for the value of such equipment and supplies so taken over by it from the engineering company, as for conversion thereof.

On July 21, 1919, the engineering company entered into a construction contract with the state for the grading and paving of a section of the Pacific highway in Clarke county, agreeing to do such construction work and furnish all necessary labor, equipment and supplies therefor for a stated consideration. The following provisions of the contract are the only portions thereof we need here particularly notice:

"IV. Should the Contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of material of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, the State Highway Commissioner shall be at liberty, after three (3) days' written notice to the Contractor, to provide any such labor or materials and deduct the cost thereof from any moneys then due or thereafter to become due to the Contractor under this contract; and if the State Highway Commissioner shall consider that such refusal, neglect or failure is sufficient ground for such action, he may, by written notice to the Contractor and to his Surety or its representative, terminate the employment of the Contractor for said work, and enter upon the premises and take possession of all materials, tools, and appliances thereon, for the purpose of completing the work included under this contract, and employ, by contract or otherwise, any person or persons to finish the work, and provide the materials therefor; and in case of such discontinuance of the employment of the Contractor, he shall not be entitled

to receive any further balance of the amount to be paid under this contract until the work shall be fully finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the State Highway Commissioner in finishing the work, such excess shall be paid by the State to the Contractor, but if such expense shall exceed unpaid balance, the Contractor shall pay the difference to the State Treasurer.''

On the same day, in pursuance of stipulations in the contract, the engineering company, as principal, and the guaranty company, as its surety, executed a bond to the state in the sum of $205,485, conditioned, following appropriate references to the contract, as follows:

''Now, therefore, if the Principal herein shall faithfully and truly observe and comply with the terms, conditions and provisions of the said contract in all respects, and shall well and truly and fully do and perform all matters and things by it undertaken to be performed under said contract, upon the terms proposed therein, and within the time prescribed therein, and shall indemnify the State of Washington against any direct or indirect damages that shall be suffered or claimed, for injuries to persons or property during the construction and improvement of such highway, and until the same is accepted, and shall pay all laborers, mechanics, sub-contractors and materialmen, and all persons who shall supply such contractor or subcontractors with provisions and supplies for the carrying on of such work, and shall in all respects faithfully perform said contract according to law, then this obligation to be void, otherwise to remain in full force and effect.''

On the same day, the engineering company executed and delivered to the guaranty company an indemnity agreement reading in part as follows:

''In consideration of the United States Fidelity and Guaranty Company (hereinafter called the Company)

becoming surety on the bond of the Puget Sound Engineering Company (hereinafter called the Applicant) herein applied for, the Applicant hereby covenants and agrees . . .

"And for the better protection of said Company, the Applicant does, as of the date hereof, hereby assign, transfer and convey to the said Company, all the right, title and interest of the Applicant in and to all the tools, plant, equipment and materials of every nature and description that it may now or hereafter have upon said work, or in, on or about the site thereof, including as well materials purchased for or chargeable to said contract, which may be in process of construction, on storage elsewhere, or in transportation to said site, . . . authorizing and empowering said Company, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment, materials and sub-contracts, and enforce, use and enjoy such possession upon the following conditions, viz.: This assignment shall be in full force and effect, as of the date hereof, should the Applicant fail or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on its part under the said contract."

This indemnity agreement was never officially recorded, either as a bill of sale or chattel mortgage. Soon thereafter the engineering company entered upon the performance of the contract and continued in such performance until about September 20, 1920, when it abandoned the work before completion thereof. On September 23, 1920, the engineering company, by written communication, notified the state highway board as follows:

"We are very sorry to have to advise you that for reasons beyond our control we are unable to proceed further with our contract for the construction of [here follows an appropriate reference to the work to be done under the contract.]"

Thereupon the state highway board notified the guaranty company of the abandonment of the work by the engineering company and demanded of the guaranty company that it complete the work according to the construction contract for the performance of which it became surety. On September 25, 1920, in pursuance of a resolution of the board of directors of the engineering company, that company executed a bill of sale conveying to the guaranty company all of its equipment and supplies located along, upon or about the portion of the highway covered by the construction contract. That bill of sale contained, among other things, the following recital:

"It is understood that the party of the second part became a surety upon the bond which the party of the first part was required to give unto the State of Washington, for the faithful performance of a road contract between the points mentioned and heretofore described, and that the party of the first part has been unable, and is unable to complete the said road contract, and that the same has been required to be completed by the party of the second part, under the terms of its bond given unto the State of Washington, and that for the consideration above mentioned, and in pursuance to the contract existing between the party of the first part and the party of the second part entered into at the time the bond was given, all of this said personal property is being delivered and sold and transferred to the party of the second part for the purpose of enabling it to have and to hold the same, and the better to equip it to perform the said contract in accordance with the contract existing between the party of the first part, the party of the second part, and the State of Washington."

On the same day, and in pursuance of the same resolution of its board of directors, the engineering company executed a second bill of sale conveying to the

guaranty company five certain automobile trucks and one trailer, then at the place of the work, evidently not intended to be conveyed by the first bill of sale; which trucks and trailer were held by the engineering company under conditional sales contracts, and hence liable to be reclaimed by the original vendors thereof; it being recited in that bill of sale that the guaranty company assumes no obligation to pay any balance due upon such conditional bills of sale. This seems to be the reason for the conveying of the engineering company's interest in these motors and trailer apart from the conveyance of the other property mentioned in the first bill of sale. Both of these bills of sale were duly placed of record in the auditor's office for Clarke county on September 30, 1920. Possession was taken by the guaranty company of all of the property described in these two bills of sale, immediately following their execution. At no prior time did the guaranty company ever take possession of any of the equipment or supplies in question. Soon thereafter the guaranty company caused the work under the construction contract to be proceeded with; the performance of which work was continued until its completion and the acceptance thereof by the state highway board on about February 1, 1921.

The property conveyed by the engineering company to the surety company by these two bills of sale was used and largely consumed or lost by the surety company in the completion of the work. The supplies were practically all so consumed, while the equipment was, to a large extent, consumed by being worn out, except as to the auto trucks and the trailer, which were repossessed by the original vendors thereof under their conditional sales contracts, so that only a portion of all the equipment and supplies that was so taken over

by the surety company remained in its hands after the completion of the work, and that portion apparently much depreciated in value by its use in the completion of the work. At the time of the abandoning of the work by the engineering company, it had incurred indebtedness for labor and materials in the prosecution of the work exceeding $22,000 in amount. The guaranty company afterwards paid out approximately that sum in satisfaction of such claims, as it was required to do as surety.

On November 22, 1920, an involuntary petition in bankruptcy was filed against the engineering company in the Federal court of this district, and such proceedings were had thereon that on December 16, 1920, the engineering company was adjudged by that court to be bankrupt and Ryan was thereupon appointed trustee of its property accordingly. As such trustee he thereafter demanded of the guaranty company that it deliver to him all of the equipment and supplies taken over by it under the bills of sale on September 25, 1920, which it, as we have seen, was almost wholly unable to do, and which it refused to do. Upon the commencement of this action in March, 1921, the trustee filed his answer therein demanding that the title to such property be decreed to be in him as of September 25, 1920, that the guaranty company be required to account for the value thereof, and that a money judgment be rendered against it in his favor accordingly; the issue so made being determined by the trial court in favor of the guaranty company, as we have already noticed.

The principal contentions made in behalf of the trustee are, in substance, that, on September 25, 1920, when the guaranty company took over the possession of the equipment and supplies under the bills of sale

from the engineering company, that company was then insolvent, of which fact the guaranty company had reasonable cause to believe; and that therefore such transfer, being within four months prior to the filing of the petition in bankruptcy in the Federal court, was void as an unlawful preference and subject to be set aside at the suit of the trustee, under the provisions of the Federal bankruptcy law, and under the trust fund doctrine of this state relating to the rights of creditors of insolvent corporations.

The principal contentions made in behalf of the guaranty company are, in substance, that the transfer by the bills of sale and surrender of possession of the equipment and supplies to that company by the engineering company on September 25, 1920, related back and became effective in law as of the time of the execution of the above quoted indemnity agreement on July 21, 1919, and that therefore such transfer was not void or voidable under the four months' rule of the Federal bankruptcy law. Also that the engineering company was in fact not insolvent on September 25, 1920, when the transfer was made by the bills of sale and surrender of possession of the equipment and supplies, and that the guaranty company had no reasonable cause to believe that the engineering company was then insolvent or likely to become insolvent by reason of such transfer or otherwise; and that therefore such transfer was not void or voidable as a preference under the Federal or state law. Also that the transfer of the equipment and supplies was made for a present consideration passing from the guaranty company to the engineering company, consisting of the payments by the guaranty company of the claims incurred by the engineering company in the prosecution of the work, in an amount equal to or greater than the value

of the equipment and supplies so transferred, and
that therefore the transfer was not void or voidable as
a preference. Also that the guaranty company became
subrogated to all of the rights of the state entitling
it to take over the equipment and supplies under the
terms of § 4 of the construction contract above quoted,
and that therefore it should not be required to account
to the trustee therefor.

We first inquire, was the engineering company in-
solvent on September 25, 1920, when it executed the
bills of sale for, and surrendered possession of, its
equipment and supplies to its surety, the guaranty
company? It seems to us that there is little room for
argument on this question. On September 23, 1920,
the engineering company advised the state highway
board that "for reasons beyond our control we are
unable to proceed further with our contract . . ."
At about the same time the guaranty company was
well advised of the engineering company's inability to
proceed with the work, and also that such inability
was because of the financial embarrassment of that
company. This was shown by the testimony of an
agent of the guaranty company who had investigated
the affairs of the engineering company. In the reso-
lution of the board of directors of the engineering
company authorizing and directing the transfer of its
equipment and supplies to the guaranty company, it
is recited, as the reason for making such transfer, "It
appearing manifest to the board of directors of this
company that this company will not be able to complete
the said contract." The first and principal bill of sale
by the engineering company to the guaranty company
executed on September 25, 1920, contains a recital in
substance the same as this.

While these recitals in the resolution and the bill of sale do not in terms tell us that the engineering company's admitted inability to proceed further with the work under the contract was because of its financial inability to do so, it is plain, we think, from the other evidence in the case, and especially that of the guaranty company's own agent, that such confessed inability to proceed on the part of the engineering company was because it was unable to meet its financial obligations already incurred, and necessary to be incurred by it in the performance of its obligations under the construction contract. We are quite convinced that it is thus made plain by the evidence, not only that the engineering company was insolvent on September 25, 1920, when it transferred its equipment and supplies to the guaranty company, but that that company then had actual knowledge of such insolvency. We decide this question apart from the fact of the later adjudication of the bankruptcy of the engineering company rendered by the Federal court in the bankruptcy proceedings. We are assuming that that adjudication was not conclusive of the insolvency of the engineering company on September 25, 1920.

Was the transfer of the equipment and supplies effected on September 25, 1920, made for a present, adequate consideration then, and not before then, passing to the engineering company? It is so contended in behalf of the guaranty company, with a view of demonstrating that there was no unlawful preference effected, as there might have been in the securing or satisfying of antecedent debts. Now it seems to be well settled that a surety liable for the default of his bankrupt principal becomes a creditor of such principal and the estate being administered in bankruptcy. 2 Black on Bankruptcy (3d ed.), § 577. Just when such

surety becomes such creditor may not be readily determinable under all circumstances, but we think it safe to assert that such surety becomes a creditor of his bankrupt principal, in any event, not later than the default of his principal, which fixes the liability upon him as surety. It might be said that up to that time the surety's liability is only potential, but we think his liability cannot, in any event, be so viewed thereafter. By the principal's default the surety's liability becomes fixed, though it may be unliquidated as to amount. It follows, we think, that the guaranty company became a creditor of the engineering company not later than the default of that company in the performance of its construction contract, which plainly occurred not later than September 23, 1920, two days before the transfer of its equipment and supplies to the guaranty company by the execution of the bills of sale and surrender to that company of its equipment and supplies on September 25, 1920. We conclude that that transfer was not supported by any consideration then passing from the guaranty company to the engineering company, and that whatever the guaranty company then or thereafter did or promised to do toward the satisfaction of the engineering company's obligations under the construction contract, whether in the payment of claims theretofore incurred in the carrying on of the work, or in the carrying on of the work thereafter, was nothing more than the guaranty company was obligated to do under its bond, which obligation had become fixed and not contingent upon the default of the engineering company on September 23, 1920.

Should the transfer of the equipment and supplies finally effected by the bills of sale and surrender of possession on September 25, 1920, be held as relating

back to and becoming effective as of the time of the making of the indemnity agreement of July 21, 1919, above quoted, viewing that agreement as, in form, a bill of sale for, or a chattel mortgage upon, the equipment and supplies? It is so contended on behalf of the guaranty company, with a view of avoiding the effect of the four months' rule of the Federal bankruptcy law. The answer to this question depends upon the validity of the indemnity agreement as a bill of sale or chattel mortgage, as against the trustee. We have seen that whatever interest the guaranty company acquired in the equipment and supplies by virtue of that agreement was only such interest as could be acquired therein by virtue of that agreement alone, unaccompanied by transfer of possession, and also unaccompanied by any official record thereof such as is required by our statutes relating to the recording of bills of sale and chattel mortgages. Of course, we are now concerned only with the question of the validity of that indemnity agreement as against the trustee. Prior to the passage of the amendment of 1910 to the Federal bankruptcy law, the Federal courts had adopted the view that a trustee in bankruptcy took no better title than that possessed by the bankrupt; so that whatever claim of title could be enforced as against the grantee, before he was adjudged bankrupt, could also be enforced as against the trustee; the law then existing being so finally settled by the decision of the Federal supreme court in *York Manufacturing Co. v. Cassell,* 201 U. S. 344, rendered in 1906. By the amendment of 1910 to § 47 of the bankruptcy law, there was embodied therein, touching the property rights acquired by the trustee in bankruptcy, the following:

"Such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon."

In *Pacific State Bank v. Coats,* 205 Fed. 618, decided by the Federal circuit court of appeals for the ninth circuit in 1913, we find the following pertinent observations touching this amendment to the bankruptcy law:

"It is the purpose of this amendment to vest in the trustee for the interest of all creditors the potential rights of creditors possessing or holding liens upon the property coming into his custody by legal or equitable proceedings. The trustee no longer stands in the shoes merely of the bankrupt, with the. limited rights of the bankrupt to attack unrecorded liens which may be valid and unimpeachable by such bankrupt; but the amendment by operation of law vests in him a lien equivalent to such as would be acquired by legal or equitable proceedings upon the property coming into his custody by virtue of the bankruptcy proceedings. 'The class of cases, unprovided for by the original act, and intended to be reached by the amendment,' says Mr. Collier in his work on Bankruptcy (9th Ed.) p. 659, 'was that in which no creditors had acquired liens by legal or equitable proceedings and to vest in the trustee for the interest of all creditors the potential rights of creditors potential with such liens.' 'This provision of the Bankruptcy Act,' says Witner, Judge, *In Re Hartdagen* (D. C.) 189 Fed. 546, 549, 26 Am. Bankr. Rep. 532, 535, 'puts the trustee, in so far as the assets of the estate are concerned, in the position of a lien creditor,' distinguishing the case of *York Mfg. Co. v. Cassell,* 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, and others of its character, which it is thought inspired the amendment."

In *Potter Mfg. Co. v. Arthur,* 220 Fed. 843, the Federal circuit court of appeals for the sixth circuit observed:

"Under the rule of *York v. Cassell, supra,* this superior right did not pass to the trustee in bankruptcy, but he stood in the shoes of the bankrupt. This rule has been changed by the amendment of June 25, 1910, to section 47a (2), providing that as to property 'in custody' the trustee 'shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings'; and, of course, the nature and extent of these 'rights, remedies and powers' must be determined by the law of the state, where not inconsistent with the Bankruptcy Act. There is general agreement that the amendment of 1910 was made with the very purpose of changing the rule declared in *York v. Cassell* (Remington, vol. 3, §§ 1137 and 1212½; Loveland [4th Ed.] vol. 1, p. 767); and we think it clear that such was the effect, and that the trustee stands in the place of each creditor, and may assert the rights which any creditor would have had against the property 'in custody', if that creditor, at the date of filing the petition in bankruptcy had been holding an execution levy."

Among numerous Federal court decisions adhering to this view of the effect of the 1910 amendment, we note the following: *Fairbanks Steam Shovel Co. v. Wills,* 240 U. S. 642; *National Bank of Bakersfield v. Moore,* 247 Fed. 913; *In re Schilling,* 251 Fed. 966.

It is the law of this state that "A mortgage of personal property is void as against all creditors of the mortgagor, both existing and subsequent, whether or not they have or claim a lien upon such property", unless placed of record within ten days after its execution in the office of the county auditor of the county wherein the property is situated (§ 3780, Rem. Comp. Stat.); and, also, that "no bill of sale for the transfer of personal property shall be valid as against existing creditors or innocent purchasers where the property is left in the possession of the vendor", unless it be

recorded in the office of the county auditor of the county wherein the property is situated, within ten days after the sale (§ 5827, Rem. Comp. Stat.).

It seems plain to us, in the light of these provisions, that the guaranty company did not acquire any interest of any nature, by way of lien or otherwise, in the equipment and supplies of the engineering company under the indemnity agreement of July 21, 1919, except as between themselves, because of the want of recording of that agreement and the want of possession of the property being taken thereunder by the guaranty company before September 25, 1920, the date of the execution of the bills of sale; and that that company did not even then acquire any interest in the equipment and supplies as against the trustee, if he then became vested with such title thereto for the benefit of the creditors of the bankrupt engineering company as is given to trustees in bankruptcy by the terms of the 1910 amendment of the Federal bankruptcy law above quoted. Section 60 of the bankruptcy law sheds light upon this branch of our inquiry. It reads in part as follows:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, . . . made a transfer of any of his property, and the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required.

"(b) If a bankrupt shall have . . . made a transfer of any of his property, and if, at the time of the transfer, . . . or of the recording or register-

ing of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the . . . transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

It seems to us, since the engineering company was insolvent, and known to be such by the guaranty company, at the time of the attempted final transfer of the equipment and supplies to the guaranty company on September 25, 1920; since that transfer occurred within four months prior to the filing of the petition in bankruptcy in the Federal court on November 22, 1920; and since that transfer, if given effect, would work a preference in favor of the guaranty company, of which fact we are convinced, though not argued by counsel, other than that any such preference would not be unlawful, that the transfer became voidable at the suit of the trustee in the interest of the creditors of the bankrupt engineering company. In other words, the trustee became, by relation, as of date prior to the transfer of the equipment and supplies on September 25th, "vested with all the rights, remedies and powers of a creditor holding a lien" against the equipment and supplies. Our decision in *Benner v. Scandinavian American Bank,* 73 Wash. 488, 131 Pac. 1149, Ann. Cas. 1914D 702, is in its reasoning, we think, all but conclusive in favor of the trustee upon this point. The decision of the Federal district court for the western district of Washington, in *In re Puget Sound Engin-*

*eering Co.,* 270 Fed. 353, cites and follows our decision
in the *Benner* case.

Contention is made in behalf of the guaranty com-
pany that, in any event, it became subrogated to the
right of the state to appropriate and use the equipment
and supplies upon the default of the engineering com-
pany, because of the terms of section 4 of the construc-
tion contract above quoted; and that, having so used
the equipment and supplies, it should not now be held
accountable for the value thereof to the trustee, further
than for the proceeds of the sale of the remaining small
portion of such equipment which is contemplated by
the trial court's judgment to be made, and the proceeds
thereof to be applied on its claim as a surety creditor
of the engineering company.  Several of our own deci-
sions are cited to support this contention.  We think,
however, the holdings of those decisions, in so far as
they can be considered as shedding lights in our pres-
ent inquiry, are, in substance, that when, by the terms
of a public improvement contract, the state or munici-
pality is *clearly required* to withhold funds applicable
to the payment of the contractor as a trust fund for
the payment of those furnishing labor and supplies,
giving to such person preferred claims against such
funds superior to that of the contractor, a surety of
the contractor having paid such preferred claims is
entitled to the portion of such funds as the persons
whose claims it so pays were entitled to; and that
when, by the terms of a public improvement contract,
the state or municipality is not *clearly required* to so
withhold funds applicable to the payment of the con-
tractor, but is merely given an option to do so, one
who may pay those furnishing labor and supplies up-
on the work does not acquire any such preferred claim
against the fund which may remain in the hands of the

state or municipality applicable to the payment of the contractor. *State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 54 Pac. 26; *Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709; *First National Bank v. Seattle,* 71 Wash. 122, 127 Pac. 837; *Maryland Casualty Co. v. Washington National Bank,* 92 Wash. 497, 159 Pac. 689; *Northwestern National Bank v. Guardian Casualty & Guaranty Co.,* 93 Wash. 635, 161 Pac. 473, Ann. Cas. 1918D 644; *National Surety Co. v. American Savings Bank & Trust Co.,* 101 Wash. 213, 172 Pac. 264; *Denham v. Pioneer Sand & Gravel Co.,* 104 Wash. 357, 176 Pac. 333; *Beyer v. Zindorf,* 116 Wash. 199, 198 Pac. 977.

Evidently it is by way of analogy that counsel for the guaranty company now hope to make their present contention effective, for we do not have here any question of a preference claim of the guaranty company against funds in the hands of the state applicable to the payment of the engineering company as contractor. If there be some analogy between claimed rights of a surety to funds in the hands of the state applicable to the payment of his principal as contractor and claimed rights of the surety to the equipment and supplies of his principal contractor on hand at the time of such contractor's default, still we are quite unable to see that such a claim to equipment and supplies can be tested other than by the terms of the construction contract. Now, by the terms of this construction contract, it seems plain to us that the state was in no sense obligated, upon the default of the engineering company, to take over the equipment and supplies on hand in trust for the benefit of the guaranty company as surety for the engineering company, or anyone else. It is true that the state could have rightfully taken over the equipment and supplies on hand if it choose to do so, and use them towards the completion of the con-

tract; but it was not obliged to do so in the interest of anyone. No trust obligation whatever rested upon the state in that behalf, as when the state contracts to withhold funds for the benefit of labor or supply claims. The state could ignore all of the equipment and supplies of the engineering company then on hand and acquire other equipment and supplies for the finishing of the work, if it cared to finish the work itself, without being in the least liable on that account to anyone. Or it could ask and allow the guaranty company to complete the work, assuming an attitude of entire indifference as to whether the guaranty company would use the equipment of the engineering company then on hand, which course the state elected to follow. This construction contract did not, by its terms, go farther than to give the state the *privilege as a mere option* to "enter upon the premises and take possession of all materials, tools and appliances thereon, for the purpose of completing the work", using the language of the contract.

We conclude that the state, by the terms of the contract, did not become a trustee for the guaranty company for the performance of any such service in the interests of that company; and that the guaranty company should now be required to account to the trustee in bankruptcy for the value of the equipment and supplies, which manifestly was the property of the engineering company unincumbered by any trust resting thereon in the interests of anyone other than the state, which voluntarily abandoned whatever right it had to such property, as it was authorized to do by the construction contract.

It is now insisted in behalf of the trustee that a money judgment should be entered against the guaranty company, upon the record made in this case, for

the value of the equipment and supplies taken over by that company from the bankrupt engineering company on September 25, 1920, as for an accounting by that company for such equipment and supplies. We agree that such a money judgment should be awarded to the trustee against the guaranty company because of its appropriation of the equipment and supplies of the bankrupt engineering company. The trial court made no finding as to the value of the equipment and supplies so taken over by the guaranty company; evidently because it deemed such finding unnecessary in view of its disposition of the case. A careful review of the evidence touching the question of such value leaves us in considerable doubt as to its amount, especially as to its amount chargable to the guaranty company. We have concluded, however, in the light of such evidence as we have in the record, to fix the value of the equipment at $10,000 and the value of the supplies at $12,000, as chargable against the guaranty company because of its appropriation thereof. In fixing such chargeable value as against the guaranty company, we have taken into consideration the fact that the trucks and trailer were lost to it by reason of them being re-possessed by the original vendors thereof under their conditional sales contracts; such loss of the trucks and trailer being without legal fault of the guaranty company.

Our final conclusion, therefore, is that the judgment and decree of the trial court should be reversed, in so far as it awards to the guaranty company any interest in, or lien upon, the equipment and supplies; and that a money judgment should be awarded in favor of the trustee in bankruptcy and against the guaranty company in the sum of $22,000. It is so ordered. The case is remanded to the superior court for further proceed-

ings consistent with our views herein expressed. This conclusion, and all that we have said in this opinion, shall, of course, be hereafter considered as being wholly without prejudice to the rights of the guaranty company as a creditor entitled to share as such in the bankrupt estate; this, as we view it, being a question wholly within the province of the Federal court to decide in the bankruptcy proceedings.

MAIN, C. J., FULLERTON, MACKINTOSH, and TOLMAN, JJ., concur.