[No. 18127.    Department One.    December 7, 1923.]

NORTH SIDE STATE BANK *et al.*, *Respondents*, v. UNITED
STATES FIDELITY & GUARANTY COMPANY, *Appellant*.[1]

INDEMNITY (11)—TIME TO SUE—ACCRUAL OF RIGHT. A right of
action upon an indemnity bond does not accrue until the expiration
of the two months allowed to the surety to verify and pay the claim,
where the bond provides that, during such time, no legal proceeding
shall be brought against the surety on the claim.

SET-OFF AND COUNTERCLAIM (9)—SUBSISTING RIGHT OF ACTION OF
DEFENDANT. Under Rem. Comp. Stat., §§ 266, 267, allowing defend-
ant to set off, in an action on contract, any demand of a like nature
which he had at the time of the commencement of the suit, an in-
demnity company, paying an insolvent bank and the receiver thereof
the amount of deposits it had guaranteed, may set off the sum paid
in an action by the bank and the receiver to recover upon an in-
demnity bond to the bank guaranteeing the fidelity of an em-
bezzling employee, where its liability accrued first and was paid
before any liability accrued against it for the embezzlement.

SAME (14)—PARTIES TO SET-OFF—RECEIVER OF INSOLVENT. Under
Rem. Comp. Stat., § 267, providing that, in actions by a trustee or
for the benefit of another, defendant may set off demands which he
could have set off against those beneficially interested, the rights of
a receiver of the bank pass subject to any right of set-off existing
at the time of his appointment.

Appeal from a judgment of the superior court for
King county, Brinker, J., entered February 16, 1923,
upon findings in favor of the plaintiff, in an action upon
a fidelity bond, tried to the court. Reversed.

*McClure & McClure (Walter S. Osborn,* of counsel),
for appellant.

*Tennant & Twitchell,* for respondents.

HOLCOMB, J.—This action was commenced on October 24, 1921, by the respondent bank, a domestic
corporation, and the supervisor of banking, as liqui-
dator in insolvency, to recover from appellant the sum
of $2,500 upon a fidelity bond.

[1]Reported in 220 Pac. 822.

Appellant admitted the allegations of the complaint, and by its answer alleged two affirmative defenses as set-off and counterclaim. The affirmative defenses are too long to set forth in full in this opinion, but may be summarized as follows: The fidelity bond was written on September 3, 1920, to guarantee the bank against loss by fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful possession, misapplication, misappropriation or other criminal act by, among others, one Paul Schaefer, an employee of the bank at that time. Schaefer's embezzlements, for which the bank sought recovery on the fidelity bond, which exceeded the amount of $2,500 for which the fidelity bond was given, accrued on and between November 24, 1920, and January 26, 1921, when the bank was taken over as insolvent by the then commissioner, now supervisor of banking. Schaefer was insolvent.

The city of Seattle became a depositor of the bank on about December 31, 1920, and by agreement between the bank and the city, a depositary bond for $5,000 was given by appellant on behalf of the bank, to the city, dated December 31, 1920.

On January 27, 1921, the city of Seattle demanded of the bank, and of the supervisor of banking, the payment of the $10,000 on deposit with the bank belonging to the city, which demand was refused, and the city thereupon demanded of appellant the payment of $5,000 under its depositary bond, which sum was thereupon on that date paid by appellant to the city.

The fidelity bond given by appellant to the bank, to guarantee the bank against pecuniary loss on the part of Schaefer, contained a provision that, upon default of the employee, claim should be made showing the items and dates of losses, in writing, to the surety at its home office, within three months after their discovery; that the surety should then have two months

after the claim was presented in which to verify and pay the same, during which time no legal proceedings should be brought against the surety as to that claim, nor at all as to that claim after the expiration of 12 months from the date of such claim.

Schaefer was an employee of the bank up to January 26, 1921. The record does not show when the claim was filed against appellant, but assuming that it was filed immediately on behalf of respondent, no liability for the loss could mature in favor of the bank against appellant at least until March 26, 1921.

It is therefore apparent that the liability of appellant for the deposit of the city of Seattle under its depositary bond accrued first, and was paid before any liability had accrued because of the embezzlement of Schaefer.

The assignments of error present but one question, and that is whether, under the facts alleged in the amended affirmative answers of appellant, the right of set-off or counterclaim existed in its favor against the liability under its fidelity bond on account of the amount paid by appellant on behalf of the bank to the city of Seattle, under its depositary bond.

The right of set-off under the code is found in two sections of Rem. Comp. Stat. [P. C. §§ 8353, 8354], as follows:

"§ 266. The defendant in a civil action upon a contract expressed or implied, may set off any demand of a like nature against the plaintiff in interest, which existed and belonged to him at the time of the commencement of the suit."

"§ 267. If the plaintiff be a trustee to any other, or if the action be in a name of the plaintiff who has no real interest in the contract upon which the action is founded, so much of a demand existing against those whom the plaintiff represents, or for whose benefit the action is brought, may be set off as will satisfy the

plaintiff's debt, if the same might have been set off in an action brought by those beneficially interested.''

Appellant asserts that, by the foregoing sections, it is apparent that the defendant in a civil action on contract may set off any demand likewise upon contract against the plaintiff which existed and belonged to the defendant *at the time of the commencement of the suit;* citing *Puget Sound State Bank v. Washington Paving Co.,* 94 Wash. 504, 162 Pac. 870.

We have held that in a suit by a receiver to recover upon a demand due an insolvent corporation, the defendant may, under the above provisions of the statute, set up as a set-off or counterclaim, any unliquidated demand arising on a contract of the corporation, and existing at the commencement of the action. *Sheafe v. Hastie,* 16 Wash. 563, 48 Pac. 246.

Respondents contend that the above case is in their favor because it was there said:

''If there was an account existing between appellant and the respondent's bank, upon which a balance could have been struck at any time prior to the failure of the bank, if it did fail, it ought to have been considered as made, and the relative rights should not have been changed by reason of the insolvency of the bank.''

It is also asserted that, as stated by many authorities, in any case the power to allow a set-off does not extend to a case where no mutual debts subsisted at the date of the appointment of the receiver, and the demand has been afterwards assigned to effect such purpose; that whatever right respondent had against appellants accrued prior to the failure of the bank, January 26, 1921; and whatever right appellant had against the bank accrued by assignment after the failure of the bank, so that, at the time of the failure, there could have been no balance of accounts.

We think the above is not a correct statement. Appellant did not take by assignment from the city of Seattle. It took by reason of its previous guaranty to protect and indemnify the city of Seattle as a depositor from any loss of the city's funds deposited in the bank, and which it did pay immediately upon the bank's becoming insolvent. The obligation was assumed on December 31, 1920, and matured and was paid on January 27, 1921.

The rule applying to such circumstances is stated in 2 Michie on Banks & Banking, page 1073, § 135 (6), as follows:

"Where a party executes a guaranty for the payment of sums deposited in a bank to which he is indebted, which sums are due and payable at the time of the bank's suspension, equity will give him credit on his indebtedness for the payments made because of the bank's failure to do so, whether he is regarded as a surety, and becomes subrogated to the rights and claims of the depositors, or simply that by the bank's failure and default he becomes liable for such sums. Where such guarantor owed certain notes to the bank, which became due before a receiver was appointed for such bank, but owing to the time required to fix plaintiff's liability, he did not pay the creditors for some time after suspension, that payment will be deemed to relate back, and to have been made at the time of suspension, and the amount so paid may be set off against the notes held by the bank against plaintiff."

And,

"The right of a surety to subrogation begins with the contract of suretyship, and is not simply inchoate until he pays the debt. It does not depend upon the stipulations or agreement therefor; and one is entitled to avail himself of this right who is compelled to pay a debt for which he is not primarily responsible, though he may not stand in relation to the principal debtor strictly as a security; . . ." 25 R. C. L. 1329.

In a well considered decision written by the late Chief Justice Brantley, in *Williams v. Johnson,* 50 Mont. 7, 144 Pac. 768, Ann. Cas. 1916D 595, it was held that the rule that the receiver of an insolvent is merely an assignee, possessing only the rights of the insolvent, so that choses in action pass subject to any right of set-off existing at the time of the appointment, applies to the receiver of an insolvent commercial bank, and the rights of those indebted to the bank must be determined by their relations to it, as they existed at the time of the appointment of the receiver, who must allow the right of set-off when it exists as it would have existed if the bank itself had sought to enforce the collection of claims.

In a very elaborate case note wherein a vast number of cases from every jurisdiction in the country were collated and cited, the editors of Annotated Cases stated it as a well established rule that a receiver takes the claims in favor of the estate subject to all the equities between the parties, and therefore against the demand of the receiver the debtor is entitled to set off a claim in his own favor existing at the time the receiver's title takes effect. See notes, Ann. Cas. 1916D 599, and 2 Bolles on Banking, 858.

We held in *United States Fidelity Co. v. Ryan,* 124 Wash. 329, 214 Pac. 433, that a surety becomes a creditor of his principal *not later* than the date of the principal's default. We there said:

"It might be said up to that time (the default of the principal) the surety's liability is only potential, but we think his liability cannot, in any event, be so viewed thereafter. By the principal's default the surety's liability becomes fixed though it may be unliquidated as to amount. It follows, we think, that the guaranty company became a creditor of the engineering company not later than the default of that company in the performance of its construction contract, . . . ."

It is unnecessary to go any farther in this case than we went in the *Ryan* case, *supra.*

It is established that the default of the bank to the city of Seattle occurred on January 26, 1921. Demand was immediately made, and the amount of the bond promptly paid by appellant. The bank and its estate thereupon became indebted to the appellant for the amount of the deposit of the city of Seattle, which had been paid by appellant, or $5,000. At that time the cause of action had not accrued against appellant as indemnitor for the employee Schaefer, hence, it had a right of set-off for the moneys paid the city of Seattle, by subrogation, to the extent of the amount of its bond on behalf of the employee Schaefer. This is no violation of the rules asserted by respondent that, one who is a debtor of an insolvent bank may not purchase claims against the bank or have them assigned to him for the purpose of using the same as set-offs, or set off after-matured claims, against his liability to the bank.

The trend of all modern decisions is toward liberality in the allowance of set-offs in case of insolvency of the party against whom the set-off is claimed, to the end that only the true balance may be required to be paid to the representative of the estate of the insolvent. See case notes to Ann. Cas. 1916D 599; *Funk v. Young,* 5 A. L. R. 79.

"It is unconscionable that the plaintiff insist that the defendant pay him, and then leave the defendant powerless because of plaintiff's insolvency to enforce his claim against the plaintiff." 24 R. C. L. 861-862.

We are convinced that the trial court erred, and the judgment is reversed and judgment ordered for appellant.

MAIN, C. J., TOLMAN, PARKER, and MACKINTOSH, JJ., concur.