[No. 19343.  *En Banc.*  January 8, 1926.]

COMMERCIAL BANK & TRUST COMPANY, *Respondent*, v. J. C. MINSHULL, *as Supervisor of Banking, et al., Appellants.*[1]

[1] BANKS AND BANKING (22)—APPLICATION OF DEPOSITS TO SET-OFF BY BANK. A bank's absolute ownership of drafts, unrestrictedly indorsed and accepted for deposit subject to check by the depositor, is not affected by the fact that it reserved the right to charge the amount back to the depositor in case of failure to collect the draft.

[2] SAME (22). Upon the insolvency of a bank which carried a deposit with its correspondent bank to meet checks on the insolvent when paid by the correspondent, the latter can off-set the amount of the deposit and is entitled to credit the same on its claim against the insolvent for the amount of checks it had paid, repayment of which was prevented by the insolvency.

Appeal from a judgment of the superior court for Douglas county, Jeffers, J., entered April 21, 1925, upon findings in favor of plaintiff. Affirmed.

*D. E. Twitchell,* for appellants.

*C. B. Hughes,* for respondent.

FULLERTON, J.—The Bridgeport State Bank, of Bridgeport, in Douglas county, was taken over, because of insolvency, by the state supervisor of banking on September 28, 1923. For a long time prior thereto, the respondent, Commercial Bank & Trust Company, of Wenatchee, in Chelan county, was its principal correspondent bank. It was the custom of other banks in the counties adjoining the county of Douglas, which should acquire paper payable by the Bridgeport bank, to forward the paper for collection through the respondent bank. The respondent bank, on receiving paper of this sort, would credit the face amount thereof

[1]Reported in 242 Pac. 29.

to the bank sending it and allow such bank to check or draw against the account at once, whether or not it had then collected from the Bridgeport bank. The Bridgeport bank recognized this custom, and, to meet the outlay the respondent would incur by the custom, it maintained a deposit with the respondent. The amount of this deposit necessarily varied from time to time; it, however, at the close of business on the day preceding the time the Bridgeport bank was taken in charge by the state supervisor of banking, amounted to the sum of $1,597.26.

Immediately prior to September 26, 1923, the respondent received, from the various banks mentioned and from individuals, checks drawn on and payable by the Bridgeport bank, aggregating the sum of $1,634.70. With reference to these, the bank followed its usual custom; it treated them as cash items, crediting the amount thereof to the account of the respective depositors and allowing the depositor to check against the account. All of the depositors, or practically all of them, availed themselves of the privilege of checking against their accounts, so that, at the close of business on September 27th following, the aggregate deposit of each of the several depositors was much less than the aggregate of the checks received.

On September 26, 1923, the respondent bank forwarded the checks to the Bridgeport bank for payment, and that bank immediately forwarded to it drafts on a Seattle bank in sums equalling the amount of the checks. These the respondent forwarded to the Seattle bank, but, before they were paid by that bank, the Bridgeport bank passed into the hands of the state supervisor of banking as before stated, and payment was refused. In due time the respondent presented to the state officer in charge of the liquidation of the

Bridgeport bank a claim in which it sought to offset the amount of the deposits against the amount of the drafts. The supervisor of banking refused to recognize its right so to do, and allowed the claim as a claim of a general creditor. The present proceeding was instituted to enforce the claimed right of offset. The trial court determined the question in favor of the respondent, and the supervisor appeals.

[1]    It is our opinion that the conclusion of the trial court is right and that its judgment must be affirmed. In virtue of the transaction, the respondent became the owner of the checks at the time it received them and credited their various amounts to the account of the persons from whom it received them. *Old National Bank v. Gibson,* 105 Wash. 578, 179 Pac. 117, 6 A. L. R. 247; *Vickers v. Machinery Warehouse & Sales Co.,* 111 Wash. 576, 191 Pac. 869; *Raynor v. Scandinavian-American Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716; *Washington Shoe Mfg. Co. v. Duke,* 126 Wash. 510, 218 Pac. 232.

It is possibly true that the respondent reserved the right to charge the amount of the checks back to the persons from whom they received them in the case they were repudiated, or for some other reason not paid by the bank on which they were drawn, but this in no way affected its title to or ownership of the checks. The precise question was presented to us in the case of *Vickers v Machinery Warehouse & Sales Co., supra,* concerning which we said:

"It has been argued that the fact that the Chicago bank took this draft considering that it had the right to charge the same back to the machinery company if it were not paid, shows that the bank did not become the absolute owner of the draft; that it could not maintain the dual position of being the absolute owner and at the same time reserve the right to charge back

if the draft were not paid. This argument is fully answered by the supreme court of the United States in *Burton v. United States,* 196 U. S. 283, when it says:

" 'The testimony of Mr. Brice, the cashier of the Riggs National Bank, as to the custom of the bank when a check was not paid, of charging it up against the depositor's account, did not in the least vary the legal effect of the transaction; it was simply a method pursued by the bank of exacting payment from the indorser of the check, and nothing more.' "

Within this view of the law, the respondent had the right to offset the amount of the checks against the deposit at the moment it received them and credited the amount thereof to the accounts of the persons from whom it received them. This was a continuing right and was not affected by the fact that the bank by whom they were payable subsequently became insolvent. *Dunlap v. Seattle National Bank,* 93 Wash. 568, 161 Pac. 364; *Puget Sound State Bank v. Washington Paving Co.,* 94 Wash. 504, 162 Pac. 870.

The judgment of the trial court will stand affirmed.

TOLMAN, C. J., MITCHELL, MAIN, MACKINTOSH, PARKER, ASKREN, and HOLCOMB, JJ., concur.