[No. 20869. Department Two. April 14, 1928.]

# H. C. JOHNSON, *Respondent*, v. THE CITY OF ABERDEEN et al., *Appellants.*[1]

[1] BANKS AND BANKING (22) — SET-OFF AND COUNTERCLAIM — DE-POSITS IN BANK. A city being a depositor in a bank at the time of its insolvency, has a right to set-off the deposit against its liability to the bank on city warrants held by the bank; in view of Rem. Comp. Stat., § 266, authorizing, in an action on a contract which has been assigned to plaintiff, a set-off of a demand of like nature existing against the person to whom he was originally liable, provided it existed at the time of the assignment.

[2] SET-OFF AND COUNTERCLAIM (14)—MUTUALITY OF CROSS-DEMANDS. The fact that the city deposit was made in the name of the city treasurer, does not affect the mutuality of the obligations, where it appears that the deposit was made in the bank as a depositary pursuant to Rem. Comp. Stat., §§ 5568-5574, in the name of the treasurer, designated as "city treasurer," who was by law the custodian of the city funds, the law not requiring the deposit to be made in any particular name.

[3] SAME (14). A want of mutuality defeating the right of set-off is not shown by the fact that the city warrants held by the bank were all current expense funds, while the city's deposits were derived from various funds which the city may have wrongfully commingled; since the demands were mutual as between the city and the bank.

[4] BANKS (7)—INSOLVENCY—MATURITY OF OBLIGATIONS. The obligation of a city depositary bank to repay a city deposit, matures on the insolvency of the bank so that subsequently maturing obligations may be off-set against it.

[5] SET-OFF AND COUNTERCLAIM (13-2)—MATURITY OF DEBT — COMMENCEMENT OF ACTION. Objection to set-off against an insolvent bank, for want of maturity of the obligations at the time of the insolvency, is not available under Rem. Comp. Stat., § 266, authorizing a set-off of any demand against the plaintiff that existed at the time of the commencement of the action.

[6] BANKS AND BANKING (7)—ASSETS ON INSOLVENCY—RATABLE DIS-TRIBUTION—SET-OFF OF DEBTS. Allowance of a set-off against an insolvent bank, striking the balance due a depositor, does not

[1]Reported in 266 Pac. 707.

destroy the rule of ratable distribution of the assets, or create a preference.

[7] SET-OFF AND COUNTERCLAIM (7)—NATURE OF INDEBTEDNESS—EF-FECT OF INDEMNITY. The fact that the city was protected by a surety bond against loss through the insolvency of a depositary bank does not defeat its right of set-off, when sued by the bank supervisor on city warrants held by the insolvent bank.

Appeal from a judgment of the superior court for Grays Harbor county, Abel, J., entered July 19, 1927, upon findings in favor of the plaintiff, in an action on city warrants, tried to the court. Reversed.

*Caldwell & Lycette, Smith & Elliott,* and *E. E. Boner,* for appellants.

*Bausman, Oldham & Eggerman,* for respondent.

*Roberts & Skeel, Elwood Hutcheson, Battle, Hulbert & Helsell,* and *I. S. Crawford, amici curiae.*

FULLERTON, J.—Hayes & Hayes, Bankers, a banking institution incorporated under the laws of the state of Washington, became insolvent, and was taken over by the state supervisor of banking for liquidation on February 7, 1927. The bank was the bonded depositary of the city of Aberdeen, and at the time of its failure had on deposit money belonging to the city in the sum of $149,471.84. The account stood on the bank's books in the name of "Floyd A. Vammen, City Treasurer," and the entire sum, with the exception of some $10,000, was in a general deposit account, subject at all times to check. The excepted sum was in two certificates of deposit, the one a time and the other a demand certificate. The bank, at the time of its failure, held current expense fund warrants of the city, the total aggregating $50,192.41.

Following the failure of the bank, the city treasurer called for payment a number of the outstanding current expense fund warrants of the city, the call in-

cluding the warrants formerly held by the bank and then in the possession of the supervisor of banking. Pursuant to the call the supervisor presented the warrants to the treasurer for payment, when payment was refused, the treasurer claiming the right to set-off against the warrants so much of the deposit account as was necessary for their payment.

The proceedings now before us were instituted by the supervisor in the superior court of Grays Harbor county to enforce payment of the warrants. He made parties defendant thereto the city of Aberdeen and its treasurer. The defendants appeared in the proceedings, and, setting forth the facts, claimed the right of set-off. After a trial, the court denied the right, and entered a judgment directing the payment of the warrants. From this judgment, the city and the treasurer appeal.

[1] The sole question presented by the appeal is whether the right of set-off existed.

The statute relating to set-off is found at § 266 of the code (Rem. Comp. Stat.) [P. C. § 8353], and reads as follows:

"The defendant in a civil action upon a contract expressed or implied, may set off any demand of a like nature against the plaintiff in interest, which existed and belonged to him at the time of the commencement of the suit. And in all such actions, other than upon a negotiable promissory note or bill of exchange, negotiated in good faith and without notice before due, which has been assigned to the plaintiff, he may also set off a demand of a like nature existing against the person to whom he was originally liable, or any assignee prior to the plaintiff, of such contract, provided such demand existed at the time of the assignment thereof, and belonging to the defendant in good faith, before notice of such assignment, and was such a demand as might have been set off against such person

to whom he was originally liable, or such assignee while the contract belonged to him.''

Comparing the statute with the facts recited, it would seem that it met the situation. The suit of the plaintiff was upon contract. The obligation sought to be set-off also arose out of contract, and belonged to the defendants at the commencement of the suit. The question of negotiability of the instrument sued on is not involved, and if the plaintiff can be said to be suing as the assignee of the bank, the right of set-off is available as against him by the express terms of the statute. Nor does the fact that the bank is insolvent affect the situation. It is the general rule, and we have held in a long line of cases, that a depositor in a bank which has thereafter become insolvent may set-off his deposit against any indebtedness of his own to the bank. *Scott v. Armstrong,* 146 U. S. 499; *Fidelity & Deposit Co. v. Duke,* 293 Fed. 661; *North Side State Bank v. United States Fidelity & Guar. Co.,* 127 Wash. 342, 220 Pac. 822; *Parkin v. Northern Bank & Trust Co.,* 127 Wash. 423, 220 Pac. 825; *Commercial Bank & Trust Co. v. Minshull,* 137 Wash. 224, 242 Pac. 29.

[2] But it is the rule that demands to be the subject of set-off must be mutual between the parties; that is to say, the demands must be due to and from the same parties in the same capacity, and be of such a nature that, had the defendant sued upon the set-off claimed, the plaintiff could claim his cause of action in that suit as a set-off. It was on the ground of want of mutuality, as we are given to understand, that the trial court concluded there could be no set-off in the present case. The reasons for the conclusion are not stated in the record, but they are possibly reflected in the arguments of the learned counsel appearing for the supervisor, and these we shall proceed to notice.

It will be remembered that the deposit was made in the bank in the name of the city treasurer, and that the city of Aberdeen in no way appeared as having an interest therein. The argument is, as we understand it, that this was an obligation due to the treasurer in his individual capacity, and since the obligations sued upon were the obligations of the city, there was no such mutuality as will permit the one to be set-off against the other. But we cannot agree that the facts support the premise here assumed. The bank, as we have before noted, was the designated depositary of the city's funds, made such pursuant to the statutes (Rem. Comp. Stat., §§ 5568-5574) [P. C. §§ 976-982]. It had given a bond to the city to insure the safe return of the deposit. The money deposited with it was the money of the city, and it was so understood by all of the parties at all times. If the bank had knowingly paid out the money on the treasurer's checks for any purposes other than for the use of the city, it would have been liable to the city for its return. *Rensselaer Valve Co. v. National Bank of Commerce of Seattle,* 129 Wash. 253, 224 Pac. 673. But it would be extending the doctrine of conversion to an unwarrantable extent to say that the manner of the deposit was in any sense a conversion of the fund by the treasurer. The treasurer was by the law the custodian of the fund. The statute providing for the designation of depositary banks and providing that the treasurers of municipalities may deposit the funds of the municipalities therein does not prescribe in whose, or in what, name the deposit shall be carried. The treasurer was at liberty to adopt the name he thought most convenient, and would not be guilty of a conversion if he adopted any name that would indicate that the fund was not his private fund. Here, there was such a

designation. The treasurer followed his name with the designation "City Treasurer," which was manifestly sufficient to indicate that it was not his personal fund. We cannot think, therefore, the judgment of the trial court can be sustained on the principle that there was no mutuality of demand, or that the demands were not due to and from the parties in the same capacity.

[3] The warrants the bank held against the city were current expense fund warrants. The funds deposited with the bank were not all funds which the city had collected for the payment of such warrants. Approximately some $20,000 thereof had been collected for that particular purpose, while the remainder was collected for the payment of warrants drawn on special funds such as local improvement district funds, the fireman's relief fund, the library fund, and the like. It is argued that these facts show a want of mutuality and deny to the city the right of set-off, except perhaps to the extent that the money held by the bank was payable on current expense fund warrants. But we cannot think this a matter of concern to the bank, or to its successor in interest. As between the bank and the city the demands were mutual. It may be that the city had wrongfully commingled the funds, but this, while it may have changed the form of the obligation due from the city to the payees of the special funds, in no way affected the relations between the bank and the city. The bank's obligation was to repay the money to the city, or to pay it to such persons as the city should direct, and no rule of law or principle of equity will permit it to plead the city's dereliction of duty to another to escape the obligation. To say that it is not liable to the city for this reason is to say that it itself owed the duty to pay the money to the *cestuis que trustent* of the city, but the obligation it

assumed when it became the city's depositary does not go to this extent. It is fully protected when it returns the money to the city.

[4, 5]    A third objection is that the obligations the supervisor seeks to recover were not due at the time of the failure of the bank. But, conceding that this event fixed the rights of the parties, in so far as the right of set-off is concerned, it is not a fatal objection that the obligations were not then payable. The deposit was then due, and it is permissible to plead it against any subsequently maturing obligation. *Puget Sound State Bank v. Washington Paving Co.*, 94 Wash. 504, 162 Pac. 870. But, perhaps, the better answer is that the premise assumed is not correct. The supervisor, it must be remembered, is himself suing on the warrants. The statute provides that the defendant may set-off against the demand of the plaintiff any demand which existed and belonged to him at the time of the commencement of the action. Measuring the rights of the parties by this test, there can be no valid objection to the set-off because of want of maturity of the obligations.

[6]    It is next objected that to allow a set-off would be in this case to destroy the rule of ratable distribution of the assets of the insolvent among its creditors and thus create a preference. But the rule is against the contention; this on the principle, that it is the balance between the accounts that is justly due, and to strike the balance does no injustice to other creditors of the insolvent. *Scott v. Armstrong*, 146 U. S. 499; *Fidelity & Deposit Co. v. Duke*, 293 Fed. 661; *Conner v. First National Bank*, 113 Wash. 662, 194 Pac. 562.

[7]    It may be that we have not caught the thought the respondent intended to convey by his further objection, but he seems to argue that the city was pro-

tected against loss by a surety bond furnished by the insolvent bank, and that this in some way renders the right of set-off inapplicable. But we cannot think the contention tenable. Whatever may have been the form of the obligation the surety assumed, the city had the right, before resorting to it, to exhaust its remedies against its principal debtor. It cannot be forced to rely wholly on the solvency of the surety for the return of the money.

It is our conclusion that the trial court was in error in denying the right of set-off, and its judgment is reversed, and the cause remanded with instructions to proceed in accordance with this conclusion.

MACKINTOSH, C. J., PARKER, MAIN, and ASKREN, JJ., concur.