[No. 21477. Department Two. March 18, 1929.]

GRAYS HARBOR NATIONAL BANK, *Respondent*, v. H. C. JOHNSON, *as State Supervisor of Banking, Appellant.*[1]

[1]Reported in 275 Pac. 697.

*Bausman, Oldham & Eggerman* and *Edw. L. Rosling,* for appellant.

*Theodore B. Bruener,* for respondent.

PARKER, J.—The plaintiff, Grays Harbor National Bank, of Aberdeen, seeks recovery from the defendant, Johnson, as state supervisor of banking, having in charge the liquidation of the affairs of Hayes & Hayes Bankers, a corporation, of Aberdeen, because of its insolvency, of the sum of $8,818.94 as a preferred claim. Recovery is sought upon the theory, in substance, that the supervisor holds that sum in trust for the Grays Harbor bank, but claims it to apply towards payment of indebtedness owing by the Grays Harbor bank to the Hayes bank, against which indebtedness the Grays Harbor bank claims a setoff equal in amount to that sum. The cause proceeded to trial in the superior court for Grays Harbor county, sitting without a jury, and resulted in findings and judgment, awarding recovery to the Grays Harbor bank as prayed for, from which the supervisor has appealed to this court.

We summarize the controlling facts from the findings of the trial court, which we regard as well supported by the evidence. At the close of business on Saturday, February 5, 1927, the Grays Harbor bank was entitled to a total clearance credit, as against the

Hayes bank, in the sum of $8,818.94, while at the close of business on that day, the Hayes bank was entitled to a total clearance credit against the Grays Harbor bank in the sum of $11,591.25. In accordance with a long-established and agreed custom, these credits were subject to clearance and settlement between the two banks at the opening of business on the following business day, which would be Monday, February 7, 1927. This was prevented by the Hayes bank, because of its insolvency, failing to open on Monday morning, February 7, when it was taken in charge by the supervisor looking to liquidation of its affairs. The balance found due from one bank to the other, upon clearance settlement each morning, seems to have been often, indeed for the most part, left as a credit upon the books of the debtor bank in favor of the other. These credits, however, were never regarded or used as checking deposit credits, but were used only in adjusting daily clearings between the banks.

On Sunday, February 6, 1927, the officials of both banks knew that the Hayes bank had become insolvent, and that it would not open its doors the next day, Monday, February 7, 1927, but that it would be then taken in charge by the state supervisor of banking. The officials of the Grays Harbor bank, fearing that this condition in the banking circles of Aberdeen might cause a run on their bank, and desiring ready cash to meet such possible run, entered into an agreement with the Capital National Bank of Olympia and the supervisor, who was about to take charge of the affairs of the Hayes bank, whereby the Grays Harbor bank would sell to the Capital National Bank certain municipal warrants amounting to $60,012.15; that cash in the vaults of the Hayes bank would be by the supervisor paid over to the Grays Harbor bank upon the warrants being delivered to him for the Capital National

Bank, and the Capital National Bank would thereupon give to the supervisor of banking a deposit credit for the sum of $60,012.15; this agreement being for the purpose of facilitating the prompt placing in the Grays Harbor bank of the $60,012.15, the purchase price of the warrants, and of avoiding transporting the money from the Capital National Bank at Olympia to the Grays Harbor bank at Aberdeen.

In pursuance of this agreement, on Monday morning, February 7, the Grays Harbor bank sent, by messenger, to the supervisor of banking in charge of the Hayes bank, the warrants in question, for delivery to the supervisor for the Capital National Bank and receiving from the supervisor the $60,012.15, the purchase price of the warrants. The supervisor retained out of the $60,012.15 the sum of $11,591.25, the amount of the total credit which the Hayes bank was entitled to as against the Grays Harbor bank, ignoring the Grays Harbor bank's total credit of $8,818.94 and its right to set off that credit as against the $11,591.25 total credit of the Hayes bank. So the messenger, having delivered the warrants to the supervisor, returned to the Grays Harbor bank with the money, the purchase price of the warrants, less $11,591.25, and the supervisor delivered the warrants to the Capital National bank, receiving a deposit credit in that bank of $60,012.15.

It seems plain to us that the supervisor of banking acted only as agent for the Capital National Bank, for the purpose of receiving the warrants purchased by that bank from the Grays Harbor bank and paying over the $60,012.15 to the Grays Harbor bank, for which he received a deposit credit for that sum in the Capital National Bank; that is, upon the supervisor of banking receiving from the Grays Harbor bank the warrants for the Capital National Bank, he

then held the $60,012.15 in trust to be by him paid over to the Grays Harbor bank for the Capital National Bank. This transaction, we think, was wholly independent of, and apart from, the matter of mutual debits and credits incident to the daily clearings of the Grays Harbor bank and the Hayes bank. Thus, the supervisor appropriated $11,591.25 of that trust fund in payment of the total credit held by the Hayes bank, ignoring the Grays Harbor bank's total credit of $8,818.94 as a setoff. The Grays Harbor bank is not complaining of the supervisor's appropriating from that trust fund the difference between its $8,818.94 credit and the $11,591.25 credit in favor of the Hayes bank, but insists that the supervisor of banking, in no event, had the right to appropriate from that trust fund any portion thereof other than sufficient to satisfy the net clearance indebtedness of the Grays Harbor bank to the Hayes bank, which would have become apparent had the clearance occurred on the morning of Monday, February 7, 1927, according to their custom, and had the supervisor of banking not taken charge of the Hayes bank.

Our real problem then is, Has the Grays Harbor bank the right to set-off its $8,818.94 total clearance credit, as against the $11,591.25 total clearance credit of the Hayes bank? It seems to us that the Grays Harbor bank has such right, and that the supervisor of banking did not have the right to appropriate $8,818.94 from the warrant trust fund in his hands, and by its application ignore the Grays Harbor bank's right of setoff. We are unable to see that these mutual clearance debits and credits between the Grays Harbor bank and the Hayes bank should be viewed other than as mutual debits and credits between other persons or corporations. This results in the one having the least total credits against the other being entitled to setoff

such total credits against the total credits of the other, and to have the balance, only, regarded as owing from one to the other. Rem. Comp. Stat., § 266; *Sheafe v. Hastie*, 16 Wash. 563, 48 Pac. 246; *North Side State Bank v. United States F. & G. Co.*, 127 Wash. 342, 220 Pac. 822; *Commercial Bank & Trust Co. v. Minshull*, 137 Wash. 224, 242 Pac. 29; *Johnson v. Aberdeen*, 147 Wash. 482, 266 Pac. 707.

■ Contention is made, in behalf of the supervisor of banking, rested upon the theory that the mutual debits and credits here involved did not arise prior to the Hayes bank passing into the hands of the supervisor. We are unable to agree with this contention. While the usual contemplated clearance between the banks did not take place on the morning of Monday, February 7, 1927, because of the Hayes bank passing into the hands of the supervisor, yet it seems to us, in view of the agreed and long-continued custom as to the time and manner of determining the balance due from one bank to the other, that the supervisor, standing in the shoes of the Hayes bank, is in no better position to make this contention than the Hayes bank would be, were its affairs not in the hands of the supervisor. We think, under all the circumstances, these mutual clearance debits and credits must be now viewed as, in legal effect, existing before the passing of the affairs of the Hayes bank into the hands of the supervisor.

■ Contention is made, in behalf of the supervisor, that the deduction and retention by the supervisor of the $11,591.25 trust proceeds in his hands of the sale of the warrants by the Grays Harbor bank to the Capital National Bank, was acquiesced in by the Grays Harbor bank. We do not think the facts warrant such conclusion; that is, we think it does not appear that the Grays Harbor bank acquiesced in such

retention and appropriation by the supervisor, further than that it now makes no claim that the portion of the $11,591.25 so retained by the supervisor of banking in excess of the Grays Harbor bank's total clearance credit of $8,818.94, should not be applied in payment of that difference; that is, should not be applied in payment of the net indebtedness of the Grays Harbor bank to the Hayes bank. Of course, it is of little moment to the Grays Harbor bank whether that net indebtedness be paid out of the $11,591.25 that happens to be in the hands of the supervisor, or whether the supervisor pay the whole of that sum over to the Grays Harbor bank, and it in turn repay to the supervisor for the Hayes bank that net indebtedness. This, manifestly, is the only reason why the Grays Harbor bank is not now complaining of having its net indebtedness to the Hayes bank paid in the manner which the supervisor assumed to exercise.

We conclude that the judgment of the superior court must be affirmed. It is so ordered.

MILLARD, FULLERTON, MAIN, and FRENCH, JJ., concur.