[No. 22645.   Department One.   November 25, 1930.]

MARYLAND CASUALTY COMPANY *et al.*, *Plaintiffs and Appellants*, v. GRAYS HARBOR COUNTY *et al.*, *Defendants and Appellants.*[1]

[1]Reported in 293 Pac. 441.

*Roberts, Skeel & Holman* and *Battle, Hulbert & Helsell,* for plaintiffs Maryland Casualty Co. *et al.*

*Eggerman & Rosling* and *Arthur G. Cohen,* for defendants Johnson *et al.*

*Austin M. Wade* and *John C. Graham,* for defendants Grays Harbor County *et al.*

PARKER, J.—The plaintiffs, casualty company and insurance company, jointly commenced this action in the superior court for Grays Harbor county, seeking a de-

cree establishing and limiting the liability of each of them upon its separate depositary bond, executed as surety, with Hayes & Hayes, Bankers, a banking corporation of this state, now insolvent, as principal, to secure payment of its deposit indebtedness to the defendant county. For the purpose of our present inquiry, we may regard the controversy as being between three parties: (1) The plaintiffs, casualty company and insurance company, whose interests are in common except as to the respective proportion of the surety liability of each, as to which there is no controversy between them; (2) the defendants, county and its treasurer, whose interests are in common; and (3) the state supervisor of banking in charge of the liquidation of the affairs of the insolvent bank.

The sureties seek to have their liability limited principally by the amount of certain warrants payable out of public funds, of which the county treasurer is custodian, which warrants were held by the bank at the time it passed into the hands of the supervisor; this, by way of set-off, to the extent that the amount of such warrants may lessen the amount of the county's deposit claim against the bank for which the sureties are liable. The sureties also seek to be subrogated to the rights of the county as against the assets of the bank, claiming that the county should be regarded as having been fully paid by the cash tender made and kept good by the sureties to the county and the unpaid warrants in the hands of the bank at the time it passed into the hands of the supervisor.

The supervisor resists the allowance of the claim of set-off upon the ground of its being a claim independent of the deposit obligation and not presented or sued upon within the time limited by law following the giving of notice by the supervisor to the creditors of the bank to present their claims, and it is therefore barred;

leaving the whole of the county's deposit claim payable only as a general claim by dividends as other claims are paid, partially or wholly as the assets of the bank may render possible.

The county, by cross-complaint, seeks judgment against the sureties for the whole amount of its deposit claim, and resists subrogation of the sureties to any of its rights as against the assets of the bank until after it has been paid the whole amount of such judgment.

The trial resulted in a decree directing the cash tender of the sureties to be paid to the county from the registry of the court, directing the surrender of the unpaid warrants by the supervisor to the county, and directing certain unpaid dividends, declared by the supervisor, to be paid by him to the county. This the court apparently regarded as making the county whole, and declined to render a personal judgment against the sureties in favor of the county for the whole of its deposit claim; so the county is left to the enforcement of the decree awards which, while likely to result in making it whole, might not do so by reason of some possible failure in the entire carrying out of those directions, which failure, if occurring, will leave no further recourse by the county against the sureties.

The decree also denies the supervisor's plea and contention that the claim of set-off is barred for failure of the county or surety to present and sue upon it within the time limited by law. The decree also denies allowance to the sureties of a portion of the claim of set-off represented by warrants of the bank, amounting to approximately $14,000, paid by the county after the insolvency of the bank, which, it is claimed by the sureties, the county negligently paid after knowing of the insolvency of the bank and of the bank's ownership of such warrants. All of the parties have appealed

from this disposition of the case in the superior court to this court.

As we view this controversy, the controlling facts are not seriously in dispute, and we think they may, for present purposes, be sufficiently summarized as follows: On February 7, 1927, the bank was an officially designated depositary of public funds of which the county treasurer is custodian. On that day there was in full force and effect a depositary bond which had been executed and delivered to the county by the casualty company as surety and the bank as principal to secure to the county all deposit obligations owing by the bank to the county to the extent of $75,000. There was also on that day in full force and effect a depositary bond of the same import which had been executed and delivered to the county by the insurance company as surety and the bank as principal, securing to the county all deposit obligations owing by the bank to the county to the extent of $50,000.

On that day the bank was closed because of its insolvency, and its affairs then passed into the hands of the state supervisor of banking for liquidation. The bank then owed the county upon its general deposit account $87,298.13. Thereupon the county immediately notified the sureties of the closing of the bank, and demanded of them the payment to it of their respective depositary surety obligations. On that day the bank held and owned warrants drawn against public funds of which the county treasurer was custodian, that is, funds of the same character as were represented by its deposit in the bank; which warrants aggregated the sum of $64,559.79, and apparently some interest in addition. This ownership of warrants by the bank was then unknown to the county or any of its officers.

The supervisor, immediately after taking charge of the affairs of the bank, gave notice to its creditors as

prescribed by Rem. Comp. Stat., § 3270, requiring all persons having claims against the bank to present the same to him within ninety days following the first publication of such notice. On April 11, 1927, the county received notice from the sureties of the bank's ownership of the warrants above mentioned, and the sureties' demand that the amount of those warrants be set off against the sureties' liability upon their bonds. Thereafter on April 11, 1927, the county notified the supervisor that the sureties had so notified the county, and that the sureties were asserting their right to have the amount of those warrants set off against the claim of the county against the sureties upon their bonds.

After the closing of the bank, at times not made certain by the record before us, some $14,000 of the bank's warrants were presented to the county treasurer for payment in response to calls duly made by the treasurer therefor, and were accordingly paid by the treasurer. None of these paid warrants was, upon its face, payable to the bank, so they did not in that respect indicate their ownership by the bank. Each did, however, bear, upon its back, in turn, the blank endorsement of the payee, the stamp of the supervisor as liquidator of the bank, and the stamp of a Montesano bank; which latter-named bank presented them to the treasurer and received payment of them. The treasurer was not otherwise advised as to the ownership of those paid warrants.

The sureties claim this to have been a negligent payment of those warrants by the county, in that the county should have refused to pay them and thus reduced its deposit claim against the assets of the bank in the hands of the supervisor, to the end that the sureties' obligation to the county would be accordingly reduced. On May 13, 1927, the county duly presented to the supervisor its deposit claim for $87,298.13, which

was by him allowed as a general claim against the assets of the bank entitling the county to dividends thereon as other general creditors became so entitled. On May 16, 1927, the supervisor notified the county as follows:

"You are hereby notified that your claim for an offset against Hayes & Hayes Bankers, an insolvent corporation of the state of Washington, in the amount of $64,559.79, is rejected in full."

This evidently was in response to the treasurer's notification to the supervisor of April 11, 1927, above noticed, wherein the supervisor was notified of the sureties' assertion of their right to have the full amount of the warrants held by the county at the time the bank became insolvent set off as against the sureties' liability to the county, which the supervisor seemed to have treated as a claim in that behalf made by the county and the sureties. On May 21, 1927, the sureties tendered to the county $23,350, which, it will be noticed, added to the amount of the whole amount of warrants held by the bank and the supervisor at the time the bank became insolvent, is somewhat in excess of the whole of the bank's deposit claim. This tender was made by the sureties in full satisfaction of their surety liability upon the bonds, and has been kept good by the sureties' depositing the $23,350 with the clerk of the court. The supervisor has declared dividends payable to the general creditors of the bank, as follows: June 4, 1927, thirty per cent; December 15, 1927, fifteen per cent; October 8, 1928, ten per cent; October 28, 1929, five per cent. The cause proceeded to trial on February 25, 1930. The supervisor has refused to pay to the county on its deposit claim any portion of the declared dividends, apparently because of the unsettled condition of the controversy.

We think it will be conducive to a correct un-

derstanding of the several phases of our somewhat involved problem to note at the outset of our discussion, and keep in mind as we proceed, the real nature of the obligations of the sureties to the county, particularly as to when those obligations became debts owing absolutely to the county by the sureties. Each of the bonds of the sureties, following recitals of the official designation of the bank as a depositary of the county funds, is conditioned as follows:

"Now, therefore, the condition of this obligation is such that the said principal . . . shall well and truly keep all such sums of money so deposited, or to be deposited, and the interest thereon, subject at all times to the check and order of said treasurer, and shall make prompt and faithful payment thereof on checks drawn by said treasurer to the extent of all monies upon deposit by such treasurer with said principal . . ."

This is as required by Rem. Comp. Stat., § 5563. In *Fidelity & Deposit Co. of Maryland v. Bassett,* 133 Wash. 77, 233 Pac. 325, there was drawn in question a liability upon a depositary bond executed by a surety company, conditioned exactly as these bonds are conditioned. The surety, Fidelity & Deposit Company, was suing upon an indemnity bond given to it by Bassett to indemnify it against its liability under its depositary bond. Touching the nature of the liability incurred under the depositary bond, we there said:

"It seems to be contended in behalf of the defendants that the evidence introduced upon the trial fails to show a legal liability on the part of the plaintiff as surety to pay the amount of the depositary bond, in that it is not shown but that there will ultimately be no loss to the county. This, we think, is effectually answered by the conditions of the depositary bond above quoted. The moment the bank closed as a going concern, that condition of the depositary bond was violated, and the plaintiff, as surety, immediately became

liable because the bank could no longer make payment of checks drawn by the treasurer against the deposit in the usual course of business. This situation manifestly entitled the treasurer to immediately make demand upon the plaintiff, as surety, upon the depositary bond to the extent of the amount of such bond, assuming for the present that there was more than that amount of the county's money on deposit in the bank.''

Observations made in our prior decisions in *United States Fidelity & Guaranty Co. v. Ryan,* 124 Wash. 329, 214 Pac. 433, 39 A. L. R. 109, and *North Side State Bank v. United States Fid. & Guar. Co.,* 127 Wash. 342, 220 Pac. 822, are in harmony with and support this view. So we start with the absolute primary liability of the sureties as debtors of the county accruing immediately upon the bank's becoming insolvent and passing into the hands of the supervisor for liquidation.

In view of the non-negotiable nature of the debt obligations evidenced by the warrants held by the bank and passing into the hands of the supervisor when it became insolvent, we think it is the law that the county then had the right to elect to set off its warrant indebtedness then owing to the bank against the deposit debt owing to it by the bank, and was not required to confine its right to share with other creditors dividends upon its entire deposit claim. Such set-off would not work an unlawful preference in favor of the county to the prejudice of other creditors of the bank. Section 266, Rem. Comp. Stat.; *Sheafe v. Hastie,* 16 Wash. 563, 48 Pac. 246; *Puget Sound State Bank v. Washington Paving Co.,* 94 Wash. 504, 162 Pac. 870; *Johnson v. Aberdeen,* 147 Wash. 482, 266 Pac. 707; *Grays Harbor Nat. Bank v. Johnson,* 151 Wash. 266, 275 Pac. 697. This, however, does not mean that the county is necessarily obliged to claim and enforce such set-off in the

interest of the sureties upon the depositary bonds, as we shall presently notice.

■ Treating the claimed right of set-off as being in common in the bank and the sureties and ignoring for the present the sureties' claim of neglect on the part of the county to so lessen their surety liability upon the depositary bonds, we inquire, Has the right of such set-off become barred for want of timely presentation to the supervisor and timely suing thereon as an independent claim against the assets of the bank? It is contended in behalf of the supervisor that that right has become so barred; the argument being that such claim of set-off is, in legal effect, an independent claim against the assets of the bank and as such is required to be presented and sued upon within the time limitation prescribed by our statute relating to the liquidation of the affairs of insolvent banks. Section 3270, Rem. Comp. Stat., as amended by chapter 115, Laws of 1923, p. 311, reads in part as follows:

"The supervisor of banking shall publish once a week for four consecutive weeks in a newspaper which he shall select, a notice requiring all persons having claims against such corporation to make proof thereof at the place therein specified not later than ninety days from the date of the first publication of said notice, which date shall be therein stated. . . . He may approve or reject any claims, but shall serve notice of rejection upon the claimant . . . Claims of depositors may be presented after the expiration of the time fixed in the notice, . . . After the expiration of the time fixed in the notice the supervisor of banking shall have no power to accept any claim except the claim of a depositor, and all claims except the claims of depositors shall be barred." Rem. 1927 Sup., § 3270.

We have seen that the notice of April 11, 1927, given by the county to the supervisor of the sureties' claim of set-off was treated by him as a set-off claim being

made by the county and the sureties. While such claim was presented within the ninety-day limitation prescribed by § 3270, above quoted, no action in court was brought thereon until the bringing of this action in November, 1928, long after the expiration of the time limit prescribed by that section for the suing upon rejected claims. So, this branch of our inquiry presents the question of whether or not this set-off claim is one which is necessary to be presented and established independently as a claim under § 3270, in order to entitle the county and the sureties to have the benefit thereof in part payment of the deposit indebtedness owing by the bank.

It is plain that the deposit indebtedness owing to the county by the bank and the warrant indebtedness owing from the county to the bank at the time it became insolvent, are both simple money contract obligations of the same nature. We are of the opinion that either the county or the bank, as its interest may suggest, has the right to have the lesser deducted from the greater of the two, to the end that the net or actual indebtedness owing from one to the other be so determined.

This ordinarily is a right sought to be exercised by the one owing the lesser amount, but we see no reason why such right may not be exercised by the one owing the greater amount when it became to its interest to do so, as it manifestly became to the interest of the county and the sureties to do so here, since they would profit by such right in that they thereby receive full benefit of such warrant indebtedness as a payment credit against the total deposit claim of the bank. The theory of our set-off statute and the reasoning of our decisions thereunder, we think, support this view. Section 266, Rem. Comp. Stat.; *Fishburne v. Merchants Bank of Port Townsend,* 42 Wash. 473, 85 Pac. 38, 7 Ann. Cas.

848; *Mendenhall v. Davis,* 52 Wash. 169, 100 Pac. 336, 17 Ann. Cas. 179, 21 L. R. A. (N. S.) 914; *Green v. Harris,* 113 Wash. 259, 193 Pac. 690; *In re Adler's Estate,* 116 Wash. 484, 199 Pac. 762.

These decisions support our conclusion by way of analogy. They clearly hold that, in an action brought by an executor or administrator upon a money demand, a like demand against the estate may be a set-off against such executor's or administrator's demand without a claim therefor being first presented to the executor or administrator; no affirmative recovery being sought against the estate by the one claiming such set-off. A comparison of our probate non-claim statute, §§ 1479, 1482, 1483, 1484, Rem. Comp. Stat., with the bank insolvency non-claim statute here applicable, Rem. Comp. Stat., § 3270, as amended by chapter 115, Laws of 1923, p. 311 (Rem. 1927 Sup., § 3270), will show that, as to barring of a claim for want of timely presentation and suit thereon, they are in substance the same. We conclude that the right of set-off which, it may be assumed for present purposes, the county asserted for the benefit of itself and the sureties, has not been barred for want of timely presentation and suit thereon in court.

▪ What duty did the county owe to the sureties looking to an assertion of set-off right it may have by way of claiming its warrant indebtedness owing to the bank as a payment upon the deposit indebtedness owing to it by the bank and thus lessening the sureties' obligation upon their depositary bonds? At the time the bank became insolvent, the county knew nothing of the bank's holding or ownership of any warrants against the county's funds the deposit of which was secured by the sureties' depositary bonds. While the county thereafter learned that the bank, at the time it became insolvent, held and owned a large amount

of such warrants, we think the record calls for the conclusion that the county did not at any time thereafter knowingly pay any warrants which were owned by the bank at the time of its insolvency.

True, the county did pay some $14,000 of warrants which were owned by the bank at the time it became insolvent, but those warrants came to the county treasurer by presentation by a Montesano bank, having on their back the blank indorsements of their respective payees, the stamp of the supervisor as liquidator of the insolvent bank and the stamp of the Montesano bank. Whether or not those warrants were the property of the bank at the time it became insolvent, the county was not then otherwise advised. Those warrants, so indorsed and presented for payment, did not necessarily mean that they had been acquired by the supervisor as property of the bank upon his taking over its affairs. They might have been acquired by him thereafter in settlement of some of the numerous transactions of liquidation.

It is apparent from the record of this case that the sureties knew as much or more about the bank's ownership of the whole of the $64,559.79 of warrants as did the county, yet the sureties did not advise the county further than that the bank owned that amount of warrants at the time it became insolvent. The sureties were the ones particularly interested in the amount of the warrants held by the bank being asserted as a set-off to their advantage. They were the ones having the real burden of the obligation to save the county whole. This is not a case of the county's holding liquid collateral securities for the express purpose of sale and application of their proceeds towards payment of the deposit indebtedness owing to it by the bank, with express power to make such sale and application as in *State v. Hartford Accident & Indemnity Co.*, 140 Wash.

278, 248 Pac. 432; but it is a case of the possible ability of the county, by the exercise of what may well be called extraordinary care on its part, to ascertain the ownership of and decline the payment of the warrants. We think the county exercised all the care required of it in that behalf under the circumstances here shown. If the sureties desired the county to do more looking to their protection as sureties, why did they not advise the county or cause the county to be advised, by reference to the warrants by their respective numbers, payees, dates and amounts, as to what specific warrants the bank held and owned when it became insolvent?

Much is attempted to be made in argument of the fact that the warrants are non-negotiable instruments. True, they are non-negotiable, and therefore the quality of negotiability does not stand in the way of rightfully claiming the obligations they evidence as set-offs, as other non-negotiable obligations may be so claimed; but manifestly the sureties do not claim that such warrants would not pass by indorsement as well as by formal assignment by express language to that effect. Indeed, to so claim would be to claim that which would demonstrate that the bank never owned them. These considerations further argue that the county was in no event charged with more than slight care in taking notice of the bank's ownership of the warrants at the time it became insolvent; that is, in so far as the county's duty to the sureties is concerned.

█ Considerable argument pro and con is presented touching the right of the sureties to be subrogated to the rights of the county as against the assets of the bank in the hands of the supervisor. True, the sureties may have, or rather may acquire, such right, but only after their surety obligation to the county has been fully satisfied; that is, after the county has been

paid the whole of its deposit claim secured by the depositary bond executed by the sureties. *Chapman v. Ross,* 152 Wash. 262, 277 Pac. 854; *State ex rel. Nayberger v. McDonald,* 128 Ore. 684, 274 Pac. 1104; *Knaffl v. Knoxville Banking & Trust Co.,* 133 Tenn. 655, 182 S. W. 232; *United States v. National Surety Co.,* 254 U. S. 73; *National Surety Co. v. Salt Lake County,* 5 Fed (2d) 34; *Maryland Casualty Co. v. Fouts,* 11 Fed. (2d) 71, 46 A. L. R. 852, and note at 857.

The sureties should have paid the whole of the county's deposit claim, as they were legally bound to do immediately upon the incurring of the insolvency of the bank, and then they could have been let into the shoes of the county as to all of its claims against the assets of the bank. Until that is done, or the county's deposit claim is otherwise paid in full, the county has the right to look to all dividends payable by the supervisor upon its deposit claim and to whatever warrant set-off is legally available in reduction of its deposit claim, as well as to the obligation of the sureties upon the depositary bonds.

While the decree rendered by the superior court might ultimately result in the county's being made whole, it does not render the sureties primarily liable to the county for the whole of the county's deposit claim. This we conceive to be the county's right, and that the decree should so adjudicate.

We finally conclude that the decree of the superior court must be modified: (1) The decree must award to the county a personal money judgment against each of the respective sureties, casualty company and insurance company, apportioned according to their respective liabilities, but in total for the full amount of the county's deposit claim, with interest; the sureties being primarily and absolutely liable to the county to

that extent; (2) The decree must award to the county, in addition to its right to immediately enforce such judgments by appropriate process, the right to have subjected toward the payment of such judgments: (a) dividends payable by the supervisor upon the county's deposit claim; (b) surrender to the county by the supervisor of such warrants as remain in his hands which came into his hands as property of the bank at the time it became insolvent; and (c) payment of the $23,350 deposited in court as tendered by the sureties to the county. When the county's judgment against the sureties is so satisfied, the sureties may, to the extent they may have contributed to such satisfaction, be subrogated to the county's rights against the assets of the bank in the hands of the supervisor. The cause is remanded to the superior court with directions to render a decree in harmony with our views and conclusions herein expressed.

The county shall be awarded as against the sureties all its costs incurred in this court. Neither of the other parties shall be awarded any costs incurred in this court.

MITCHELL, C. J., MAIN, TOLMAN, and HOLCOMB, JJ., concur.